UNITED STATES of America, Plaintiff-Appellee,

v.

Maylon K. LONDON, Defendant-Appellant.

No. 82–8400.

United States Court of Appeals, Eleventh Circuit.

Sept. 22, 1983.

Thompson, Fox & Hardman, Robert B. Thompson, Gainesville, Ga., for defendant-appellant.

Edgar W. Ennis, Jr., Asst. U.S. Atty., Macon, Ga., for plaintiff-appellee.

Before JOHNSON and ANDERSON, Circuit Judges, and COLEMAN,* Senior Circuit Judge.

COLEMAN, Senior Circuit Judge:

Maylon K. London was a lawyer in Cleveland, Georgia. He represented clients who were being sued on a contract for the installation of steam units which had been installed in a motel prior to its acquisition by those clients. On October 28, 1981, the District Court indicated at a pretrial conference that a summary judgment would be granted in favor of the London clients. Very soon after the pretrial conference Mr. London met with two of his clients in Lavonia, Georgia, and presented them with a copy of a *purported* order which he said the Judge would be signing soon and which would require the clients to pay the plaintiff $54,093 unless it was permitted to remove the steam units. In the latter event, the amount to be paid would be $34,000.

On November 2, 1981, the anticipated summary judgment, absolving the clients of all liability, was signed by the Judge, with copies forwarded to all counsel of record.

In a meeting of November 4, the attorney again made the same false representations which he had previously made.

On November 19, Mr. London again met with his clients in Lavonia, in which he presented a copy of a purported three page order, carrying the claimed signature of the District Judge, requiring the clients to pay the sum of $27,000. This purported order had been concocted by substituting a fake second page for that which had, in fact,

been signed by the Judge and entered by the Clerk.

Later, that same day, the clients found out that the District Court, seventeen days earlier, by summary judgment, had absolved them of all liability. This put the fat in the fire for their lawyer, although he did not at the time know it.

The lawyer for a third party, who had told the London clients of the actual facts, notified the District Judge. The Judge alerted the FBI. The result was that Mr. London was invited to another meeting at the motel in Lavonia on December 11. Unknown to him, the FBI videotaped the meeting. He continued to represent the bogus three page order as the genuine order of the District Court. He accepted a check for $27,000, made out to him individually, on the representation that it would be held in escrow to pay the judgment, whereupon he was promptly arrested and this prosecution followed.

Mr. London was indicted under a four count indictment for violations of 18 U.S.C., § 1001, using a falsely made document within the jurisdiction of an agency of the United States, 18 U.S.C., § 505, forging and concurring in the use of a forged document, and 18 U.S.C., § 1503, endeavoring to obstruct justice.

The attorney stood trial before a jury and was convicted on all counts. He was sentenced to five years probation on each count, to run concurrently, but as a special condition of probation the defendant was to pay a fine of $3,000 within thirty days and shall not practice law for a period of five years.

After oral argument in Atlanta, we now decide Mr. London's appeal.

### A

*The applicability of 18 U.S.C., § 1001*

The § 1001 conviction is attacked specifically on the ground that false docu-

---

* Honorable James P. Coleman, U.S. Circuit Judge for the Fifth Circuit, sitting by designa-

tion.

ments used in a federal court in civil litigation between or among private litigants do not fall within the scope of the statute, which reads as follows:

> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statement or representations, or makes or uses any writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000, or imprisoned not more than five years, or both.

In *United States v. D'Amato,* 507 F.2d 26 (2 Cir., 1974), the Second Circuit decided a case involving a § 1001 conviction for giving a false statement during the course of private civil litigation in a federal court. Indeed, this is the only federal appellate decision directly in point which we have been able to discover. The appellant in *D'Amato* was sued by Johnson Products, Inc. in the District Court for the Eastern District of New York,[1] and was later prosecuted under § 1001 for making a false statement in an affidavit filed during the course of that civil litigation. *Id.* at 27. The conviction was appealed to the Second Circuit, where the question was raised as to whether § 1001 was applicable to the facts.[2] In deciding this issue, the Court analyzed the legislative history of § 1001 as interpreted by the Supreme Court in *United States v. Bramblett,* 348 U.S. 503, 75 S.Ct. 504, 99 L.Ed. 594 (1955), and in *United States v. Gilliland,* 312 U.S. 86, 61 S.Ct. 518, 85 L.Ed. 598 (1941). Although the *Bramblett* Court ruled that the word "department" in § 1001 encompassed the executive, legislative and judicial branches of the government, 348 U.S. at 509, 75 S.Ct. at 508, the Second Circuit found that the statute is not intended to apply to false statements made in civil actions in the United States Courts where the government is not a party to the lawsuit; instead, the statute was intended to proscribe only those false statements meant to deceive the government or its agencies. The Court in *D'Amato* observed that § 1001 was originally enacted to protect the government from fraud,[3] and was later "broadened [in 1934] to maintain the integrity of the administrative agencies" whose development coincided with the 1934 amendments. *Id.* at 30.[4] *See, United States v. Gilliland,* 312 U.S. at 93, 61 S.Ct. at 522.

Statements of other Courts reinforce the concept that the purpose of § 1001 is only to prevent misrepresentations *to the government.* In *Bramblett, supra,* the Supreme Court stated that the purpose of the 1934 revision of the statutory language was "to indicate that not all falsifications but only those made *to government organs* were reached", 348 U.S. at 508, 75 S.Ct. at 507 (emphasis added).[5] In *Bryson v. United States,* 396 U.S. 64, 90 S.Ct. 355, 24 L.Ed.2d 264 (1969), wherein the constitutionality of

---

**1.** The facts surrounding the civil litigation were as follows:

The civil action, in which appellant was a codefendant, was one brought in July of 1972 by Johnson Products, Inc., the manufacturer of the cosmetic hair preparation "Ultra Sheen", for damages and an injunction arising out of the sale by appellant of over 18,000 jars of a counterfeit product under the Ultra Sheen label. Appellant filed an affidavit in the civil suit dated August 8, 1972, denying knowledge of the fraudulent or counterfeit nature of the product which he sold. 507 F.2d at 27.

**2.** The question was raised by the Court itself, apparently during oral argument. *Id.* at 26.

**3.** The statute was first enacted in 1863 to prevent false claims to the government by military personnel, *United States v. Bramblett,* 348 U.S.

at 504–505, 75 S.Ct. at 505–506. Various extensions were made of the statute between 1863 and 1934. *Id.* at 505, 75 S.Ct. at 506.

**4.** The 1934 amendment to the statute, among other things, added the words "in any matter within the jurisdiction of any department or agency of the United States ...." *Id.* at 506, 75 S.Ct. at 507.

**5.** The statute was again revised in 1948, at which time it was divided into § 287, false claims, and § 1001, false statements or documents. No substantive changes were made. *Id.* at 508, 75 S.Ct. at 507. Section 1001 has remained unchanged since 1948.

§ 9(b) of the National Labor Relations Act was the fundamental issue,[6] the Supreme Court, in reference to § 1001, spoke of "a valid legislative interest in protecting the integrity of official inquiries", 396 U.S. at 70, 90 S.Ct. at 359.

The Eleventh Circuit has had occasion to remark in an appeal of § 1001 conviction that:

> The purpose of § 1001 is clearly *to protect the government* from fraud and deceit. The reach of the statute covers all materially false statements, including non-monetary fraud, made *to any branch of the government.* (Emphasis added).

*United States v. Fern,* 696 F.2d 1269, 1273 (11 Cir., 1983).[7]

"18 U.S.C., § 1001 requires a finding that applicant misled government official by material false statements", J. Rehnquist (opinion in Chambers), *Julian v. United States,* —— U.S. ——, 103 S.Ct. 3522, 77 L.Ed.2d 1290 (1983).

Judge Oakes, writing for the Second Circuit in *D'Amato,* concluded that:

> We see, in short, nothing in the case law or the legislative history which would support a prosecution under § 1001 for a false statement made in a *private civil action* even though it is made in the United States Courts. 507 F.2d at 30.

From the foregoing we conclude that § 1001 was not applicable to the conduct of the defendant-appellant in this case and that the motion for directed acquittal on this point should have been granted.

This being so, it is unnecessary that we should consider or decide the other issues which the appellant seeks to raise as to this section of the Criminal Code.

---

**6.** The petitioner in *Bryson* was originally convicted under § 1001 for falsely denying affiliation with the Communist Party on an NLRB form in 1955, 396 U.S. at 65, 90 S.Ct. at 356. He sought in his appeal to collaterally attack the government's inquiry as to whether or not he was affiliated with the Communist Party. *Id.* at 67–68, 90 S.Ct. at 357–58.

**7.** Section 1001 has also been applied in situations where false information has been given state agencies which make use of federal funds.

## B

### *Forgery by photocopying machine*

The appellant urges reversal of his convictions on Counts two and three, forging the signatures of the district judge and the deputy court clerk, 18 U.S.C., § 505. He argues that the government failed to establish that forgery was committed, he complains of the instruction in which the jury was told

> "the term forges, as used in this law, includes the placing in any manner of a signature or a copy of a signature upon a materially false or altered document",

and he contends that the trial court lacked venue.

18 U.S.C., § 505 provides:

> Whoever forges the signature of any judge, register, or other officer of any court of the United States, or of any territory thereof, or forges or counterfeits the seal of any such court, or knowingly concurs in using any such forged or counterfeit signature or seal, for the purpose of authenticating any proceeding or document, or tenders in evidence any such proceeding or document with a false or counterfeit signature of any such judge, register, or other officer, or a false or counterfeit seal of the court, subscribed or attached thereto, knowing such signature or seal to be false or counterfeit, shall be fined not more than $5,000, or imprisoned not more than five years, or both.

The stipulated testimony of the District Judge was that he did not author the middle page of the specious three page document, and the document was not an authen-

---

See, e.g., *United States v. Richmond,* 700 F.2d 1183, 1187, 1188 (8 Cir., 1983), state highway project using federal funds within jurisdiction of federal agency for purposes of § 1001; *United States v. Goldstein,* 695 F.2d 1228, 1236 (10 Cir., 1981), state medicaid program reimbursed with federal funds within jurisdiction of federal agency; *United States v. Baker,* 626 F.2d 512, 514, 515 (5 Cir., 1980), city housing authority using HUD funds was within jurisdiction of federal agency for purposes of § 1001.

tic order. The statement went on to say that the Judge never signed the document; the signature placed thereon appeared to be a photocopy of his actual signature. The deputy clerk also testified that the signature appearing on the first page of the specious order appeared to be a photocopy of her actual signature. She stated that the three page document had not been entered on the docket sheet, nor had it been placed in the court file.

With the above testimony in mind, and casting aside all surplusage, one can reduce the appellant's first two contentions to this: The signatures appearing on the photocopied pages are copies of genuine signatures, and, therefore, they cannot be said to be forgeries, as the word is used in the statute.[8] The question for us to determine, then, is whether the word "forges", as used in § 505, includes the photocopying of genuine signatures of judges and officers of the United States Courts, when such photocopied signatures are used to authenticate false documents for fraudulent purposes. We answer this in the affirmative.

Congress has not defined the term *"forges"* for the purpose of Title 18, and we have found no federal court decision that has examined the question. We have found no case that reviews the legislative history of § 505. So, "in the absence of anything to the contrary", the Supreme Court instructs us, "it is fair to assume that Congress used the word 'forges' . . . in its common law sense", *Gilbert v. United States,* 370 U.S. 650, 655, 82 S.Ct. 1399, 1402, 8 L.Ed.2d 750 (1962).

Common law forgery can be defined as the false making or materially altering, with intent to defraud, of a writing which, if it was genuine, might be of legal efficacy, *United States v. McGovern,* 661 F.2d 27, 29 (3 Cir., 1981), *cert. denied* 454 U.S. 1157, 102 S.Ct. 1031, 71 L.Ed.2d 315 (1982), and 455 U.S. 950, 102 S.Ct. 1453, 71 L.Ed.2d 665

(1982); *Milton v. United States,* 110 F.2d 556, 560 (D.C.Cir., 1940).

In *Benson v. McMahon,* 127 U.S. 457, 8 S.Ct. 1240, 32 L.Ed. 234 (1888), the Supreme Court was faced with the issue of whether the printing of one's name on theater tickets without authorization constituted forgery as the term was used in an extradition treaty between the United States and Mexico.

The appellant in *Benson* had falsely represented himself in Mexico City as the agent of Henry E. Abbey, "a noted theatrical manager" in the United States, who had brought Adelina Patti, a "wonderful songstress" of her day to the United States from Europe under an agreement whereby she would also sing in Mexico. After making the necessary arrangements with officials of the Teatro Nacional in Mexico City, the appellant printed and sold tickets for concerts in which Adelina Patti was purportedly to appear. The name "Henry E. Abbey" was printed on the tickets. After the scam had produced a substantial amount of money, the appellant absconded to Europe with the ticket sale proceeds. *Id.* at 463, 464, 8 S.Ct. at 1243. When the appellant later turned up in the United States, the Mexican government sued to have him returned to Mexico under the extradition treaty of December 11, 1861, entered between the United States and Mexico. *Id.* at 458, 8 S.Ct. at 1241, in which the crime of forgery was among the offenses listed in the treaty but forgery was not defined.

With understandable reservations, the Supreme Court decided that it should refer to the common law concept of forgery in determining whether the appellant had committed forgery as the term was used in the treaty. *Id.* at 466, 8 S.Ct. at 1244. The Court made the following comments which should control here.

[I]t is not necessary that the name which appears upon the false instrument shall be placed thereon by means of a pen

---

8. The appellant maintains that although his actions may have constituted fraud, they did not amount to forgery under § 505. One must distinguish between false pretenses and forgery.

A good example of this distinction is made in *United States v. Jones,* 553 F.2d 351 (4 Cir., 1977), *cert. denied,* 431 U.S. 968, 97 S.Ct. 2928, 53 L.Ed.2d 1064.

or by the actual writing of it in script, but that the crime may be committed as effectually if it is done by an engraved plate or type so arranged as to represent or forge the name as made by the actual use of a pen. It is difficult to perceive how the question as to whether the forgery was committed by printing, or by stamping, or with an engraved plate, or by writing with a pen, can change the nature of the crime charged. *Id.* at 467, 8 S.Ct. at 1245.

We hold that a false writing can be made by any number of artificial means and still fall within the ambit of common law forgery. The appellant reproduced the signatures of the Judge and the Clerk artificially, by the use of a photocopy machine, as part of a fraudulent scheme. Fundamentally, there is no distinction between the activities of the appellant in the instant case and those of the appellant in *Benson*. The fact that the appellant was able to employ modern means in reproducing the signatures directly from copies of originals offers no material distinction between the two cases. Whether it be photocopy machines in 1983 or impression plates in 1888, the technology is unimportant. The bottom line is that, in both cases, false writings of the names of others were used in an attempt to defraud. This is the heart of common law forgery, and in this instance, such activity is proscribed by § 505.

### Venue

■ Judge Randall, in *United States v. White*, 611 F.2d 531 (5 Cir., 1980), *cert. denied*, 446 U.S. 992, 100 S.Ct. 2978, 64 L.Ed.2d 849, gave a good summary of the law governing venue:

The right of a criminal defendant to be tried in the district in which the crime was committed is guaranteed by the Sixth Amendment to and Article III of the United States Constitution, and Rule 18 of the Federal Rules of Criminal Procedure. Although the Supreme Court has made it clear that questions of venue and territorial jurisdiction are not to be taken lightly or treated as mere technicalities, *United States v. Cores,* 356 U.S. 405, 407 [78 S.Ct. 875, 877, 2 L.Ed.2d 873] (1958); *United States v. Johnson,* 323 U.S. 273, 276 [65 S.Ct. 249, 250, 89 L.Ed. 236] (1944), and the burden of proving that the crime occurred in the district of trial is squarely on the prosecution, *United States v. Luton,* 486 F.2d 1021, 1022, 1023 (5 Cir., 1973), *cert. denied,* 417 U.S. 920 [94 S.Ct. 2626, 41 L.Ed.2d 225] (1974), the prosecution is not required to meet the reasonable doubt standard applicable to all substantive elements of an offense. Rather, '[t]he prosecution need only show by a preponderance of the evidence that the trial is in the same district as the criminal offense. Further, there need not be direct proof of venue where circumstantial evidence in the record as a whole supports the inference that the crime was committed in the district where venue was laid', *United States v. Turner,* 586 F.2d 395, 397 (5 Cir., 1978), *cert. denied,* 440 U.S. 926 [99 S.Ct. 1258, 59 L.Ed.2d 480] (1979). If the government shows by a preponderance of the evidence that the crime was committed in the trial district, both territorial jurisdiction and proper venue are established. *United States v. Luton,* 486 F.2d 1022, 1023; *Cauley v. United States,* 355 F.2d 175, 176 (5 Cir., 1966), *cert. denied,* 384 U.S. 951 [86 S.Ct. 1572, 16 L.Ed.2d 548].

611 F.2d at 534, 535.[9]

The appellant was indicted on two counts of violating § 505, counts two and three, and each count charged two separate means by which the offense was committed, by "forgery" and "concurring in the use" thereof.[10] The evidence in the case showed

---

**9.** *See, also, United States v. Wuagneux,* 683 F.2d 1343, 1356, 1357 (11 Cir., 1982); *United States v. Lewis,* 676 F.2d 508, 511 (11 Cir., 1982), government need only establish venue by preponderance of the evidence as opposed to proof beyond a reasonable doubt.

**10.** 18 U.S.C., § 505 makes it unlawful to "forge" the signature of a judge or officer of a United States Court or to "concur in the use" of such forged signature for the purpose of authenticating a proceeding or document.

that the genuine order was prepared in the Middle District of Georgia, that the forged document, composed in part of copies of altered pages of the genuine order, was presented to Govind and Harry Patel in the Middle District of Georgia, that a copy of the forged document was made in the offices of Govind and Harry Patel in the Middle District of Georgia, and that no copy of the altered document was found in London's files, although handwritten and typed drafts of the second page of the document were found in London's files.

The government clearly established by a preponderance of the evidence that London "concurred in the use" of a forged signature in the Middle District of Georgia, and that they copied it at that time. The appellant more or less concedes this in his brief:

> "[W]hile the evidence might establish that appellant concurred in the use of the signatures within that district; there was no evidence that he forged the signatures thereto."

Appellant also admits that where a crime can be committed by more than one method, proof of any one such method is generally sufficient to establish venue. However, in attacking venue in this case, the appellant contends that "where, as here, the methods of committing the crime involve two different districts, one in each, this rule cannot apply. There can be no way of knowing which of the two, or both, upon which the jury based its verdict". The appellant cited no authority in support of this proposition, and we find none.

Where a single crime can be and is committed by two methods, and each method occurs in a separate judicial district, the defendant would have to be tried in one district or the other. He could not be tried in both at the same time. So, logically, if the prosecution showed that one of the methods of committing the crime occurred in the district where it was being tried, venue would then lawfully be established in that district. This is obviously the situation here. As discussed above, the government showed, by at least a preponderance of the evidence, that the appellant "concurred in

the use" of forged signatures, under § 505, in the Middle District of Georgia wherein this case was tried.

This is not all, however.

In *Conley v. United States*, 23 F.2d 226 (4 Cir., 1928), the appellant, alleging improper venue, challenged his conviction, in the District Court for the Western District of North Carolina, for forgery of liberty bonds and possession of the same with intent to defraud. The bonds were stolen in Greensboro, North Carolina, and the appellant was arrested in Detroit, Michigan, with the forged bonds in his possession. The Fourth Circuit reversed appellant's conviction for lack of sufficient evidence that the bonds were forged in the Western District of North Carolina. In reaching its decision, the Court found that, in the absence of evidence to the contrary, as there was in *Conley,* there is a presumption that the forgery was committed where the bonds were first found in their forged state. *Id.* at 228. The Court quoted Judge Story of Massachusetts as he announced the rule in 1822:

> And I take the rule of law to be, that the place, where an instrument is found or offered in a forged state, affords prima facie evidence, or a presumption that the instrument was forged there, unless that presumption be repelled by some other fact in the case. * * * The rule, which I have stated, is not merely correct in a legal sense, but is the dictate of common sense and reason. If a forged instrument is found or uttered in one place, and there is no evidence to show, that it was forged elsewhere, what ground is there to presume, that it was not forged, where it was found, or uttered? If its existence in a forged state is not proved in any other place, it must, from the necessity of the case, be presumed to have been forged, where its existence in such state is first made known.

*United States v. Britton,* 24 Fed.Cas. No. 14, 650 p. 1239 at 1241 (CCD Mass., 1822).

The Fifth Circuit has also had occasion to rely on Judge Story's rule in overturning a

forgery related conviction for lack of venue. In *United States v. Owens*, 460 F.2d 467 (5 Cir., 1972), a juvenile appealed his conviction, under 18 U.S.C., § 2314, for aiding and abetting in the interstate transportation of forged securities. The evidence showed that the securities, nationwide money orders, were stolen by a third party in Patterson, New Jersey, and that the appellant attempted to pass them in their forged state in Shreveport, Louisiana. The appellant was tried and convicted in the District Court for the Western District of Louisiana. The Court, in reversing the conviction, remarked,

> The difficulty of detecting or proving the locale of the alteration or forgery of the security has engendered a presumption in aid of proof. As early as 1822 Judge Story instructed a jury that there exists a presumption that an instrument was forged where it was first found in its altered state or uttered. Applying this rule to the instant case, a presumption arises that the five money orders which the defendant attempted to utter were falsely made and forged in Louisiana. *Id.* at 469.

The Court went on to find that the government failed to rebut this presumption, and, therefore, the government failed to prove, as an essential element of the offense, that the securities passed through interstate commerce while in a forged condition. *Id.* at 471.

Therefore, we hold that proper venue lay in the District Court for the Middle District of Georgia, and appellant's § 505 conviction, on both counts, is affirmed.

## C

### *Obstruction of Justice*

■ Count four of the indictment charged the appellant with obstructing the due administration of justice in violation of § 1503 of the United States Criminal Code, which provides:

> Whosoever corruptly, or by threats of force, or by any threatening letter of

communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States Commissioner or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, commissioner, or other committing magistrate in his person or property on account of the performance of his official duties, *or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice,* shall be fined not more than $5,000, or imprisoned not more than five years, or both. (Emphasis added).

18 U.S.C., § 1503 (1983 Supplement).[11]

We are urged to reverse appellant's conviction under 18 U.S.C., § 1503 on the grounds that the trial court erred in overruling appellant's motion for judgment of acquittal because appellant's activities did not fall within the ambit of the statute, and in instructing the jury that the term due administration of justice contemplates and imports a free and fair opportunity for every litigant in a pending case to have his claim adjudicated without corrupting influences.

As is apparent from a reading of the statute, § 1503 is composed of two parts. The first clause prohibits the influencing, intimidation, or impeding of any witness, juror or court official. The second penalizes anyone who "corruptly ... endeavors to influence, obstruct, or impede, the due administration of justice." The Fifth Circuit has declared that *ejusdem generis* cannot be used to restrict the second, or "omnibus" clause, to the type of acts prohibited by the first clause. *United States v. How-*

---

11. The second portion of the statute, applicable    to this case, is termed the "omnibus clause".

*ard,* 569 F.2d 1331, 1333 (5th Cir.1978). Instead, "the most natural construction of the clause is that it prohibits acts that are similar in result, rather than manner, to the conduct described in the first part of the statute." *Id.*

Although apparently no previous cases with facts similar to the one at hand have been brought under § 1503, its omnibus clause has been held to encompass a broad variety of violations. London has not offered any reason why a fraudulent judgment given by a lawyer to his client does not constitute an endeavor to impede the due administration of justice other than the fact that the obstruction occurred after the resolution of the lawsuit. This distinction is not persuasive in light of the consistently broad interpretation given to § 1503. *E.g., Samples v. United States,* 121 F.2d 263, 266 (5th Cir.), *cert. denied,* 314 U.S. 662, 62 S.Ct. 129, 86 L.Ed. 530 (1941) (omnibus clause "is broad enough to cover any act, committed corruptly, in an endeavor to impede or obstruct the due administration of justice"). Because the omnibus clause "was drafted with an eye to 'the variety of corrupt methods by which the proper administration of justice may be impeded or thwarted, a variety limited only by the imagination of the criminally inclined,'" *United States v. Griffin,* 589 F.2d 200, 206–07 (5th Cir.1979) (citations omitted), London's actions were clearly within its scope.

### Conclusion

The judgment of the District Court predicated upon violations of 18 U.S.C., § 505 (Counts 2 and 3), and 18 U.S.C., § 1503, is AFFIRMED.

The judgment with reference to 18 U.S.C., § 1001 (Count I), is REVERSED.

The case is REMANDED for entry in the District Court of an amended judgment accordingly.

AFFIRMED in part, REVERSED in part and REMANDED.