**UNITED STATES of America, Plaintiff,**

v.

**Richard A. LUNDWALL and Robert W. Ulrich, Defendants.**

**No. 97 CR. 0211 (BDP).**

United States District Court, S.D. New York.

April 2, 1998.

---

**250**

Elliott B. Jacobson, Asst. U.S. Atty., Stanley J. Okula, Asst. U.S. Atty., U.S. Attorney's Office, White Plains, NY, for U.S.

Ethan Levin–Epstein, Garrison, Phelan, Levin–Epstein & Penzel LLP, New Haven, CT, Vincent L. Briccetti, Briccetti & Calhoun, White Plains, NY, for Defendant Lundwall.

Jonathan L. Rosner, Rosner Bresler Goodman & Unterman LLP, New York, NY, for Defendant Ulrich.

## MEMORANDUM DECISION

PARKER, District Judge.

Richard A. Lundwall and Robert W. Ulrich, two former officials of Texaco, Inc., are charged in a two count Superceding Indictment with conspiring to obstruct justice in violation of 18 U.S.C. § 371 and with obstruction of justice in violation of 18 U.S.C. § 1503. They move to dismiss on the ground that § 1503 does not apply to civil discovery matters. Since we conclude that § 1503 reaches the willful destruction of documents during civil litigation, defendants' motion is denied.

The Indictment charges that defendants' conduct occurred during the pendency in this District of a civil class action employment discrimination law suit styled *Roberts v. Texaco, Inc.*, 979 F.Supp. 185 (S.D.N.Y.1997). The *Roberts* plaintiffs alleged that Texaco had racially discriminated against its African–American employees. During pretrial preparations for *Roberts*, Texaco's legal department had allegedly advised certain Texaco officials, including Ulrich, of the pendency of the lawsuit and of the need to retain documents relevant to the lawsuit. A few months later, Lundwall was deposed and was requested on the record to produce documents pertaining to Texaco's minority employees. As a result of the request made by plaintiffs' counsel in the *Roberts* suit, Lundwall and Ulrich, among others, were given responsibility for collecting responsive documents for production. Following the requests made during Lundwall's deposition and memorialized in a subsequent follow-up letter, Lundwall, Ulrich and others are alleged to have first withheld and then destroyed documents sought by plaintiffs' counsel and required to be produced in *Roberts*.

The Indictment charges that defendants' conduct violated 18 U.S.C. § 1503, which provides, in part:

Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States magistrate judge or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account

of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, magistrate judge, or other committing magistrate in his person or property on account of the performance of his official duties, or *corruptly, or by threats or force or by threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct or impede, the due administration of justice,* shall [be guilty of a federal crime].

(Emphasis supplied.)

■ The defendants move to dismiss on the ground that § 1503 does not apply to their conduct. Their principal contention is that the statute has never been used to prosecute individuals charged with the destruction or concealment of documents during civil discovery. *See Richmark Corp. v. Timber Falling Consultants, Inc.,* 730 F.Supp. 1525, 1532–33 (D.Or.1990).

· More specifically, defendants contend that two distinct lines of cases interpreting § 1503 have, in effect, limited its reach. Under the first, § 1503 reaches contumacious conduct outside the courtroom, including conduct arising in civil proceedings, but only if that conduct amounts to willful contempt of court.[1] Under the second, § 1503's omnibus clause (the underscored language) applies to the destruction or concealment of documents in criminal investigations.[2]

Cases involving prosecutions for document destruction during civil pre-trial discovery are notably absent from the extensive body of reported § 1503 case law. Defendants contend that this absence precludes the application of § 1503 to their alleged conduct. With these objections in mind, we turn first to the text of the statute and then to the cases construing it.

"It is axiomatic that '[t]he starting point in every case involving construction of a statute is the language itself.'" *Landreth Timber Co. v. Landreth,* 471 U.S. 681, 685, 105 S.Ct. 2297, 85 L.Ed.2d 692 (1985) (quoting *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S.

723, 756, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975)); *see also Brogan v. United States,* —— U.S. ——, 118 S.Ct. 805, 139 L.Ed.2d 830 (1998). Generally, the text of the statute controls except in the "rare case [in which] the literal application of the statute will produce a result demonstrably at odds with the intention of its drafters." *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982). In such cases, it is the intention of the legislators, rather than the strict language of the statute, that controls. *Id.* Finally, in interpreting a statute, the Court "must not be guided by a single sentence or member of a sentence, but [should] look to the provisions of the whole law, and to its object and policy." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 51, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). *See also Samuels, Kramer & Co. v. Commissioner of Internal Revenue,* 930 F.2d 975, 979 (2d Cir. 1991).

Defendants' conduct as alleged in the Indictment seems to us to fall comfortably within the reach of the text of § 1503. As we have seen, the Indictment alleges that defendants, knowing that relevant documents were to be produced in ongoing civil litigation, deliberately concealed and destroyed them. In doing so, defendants are charged with having acted "corruptly" as opposed to inadvertently or with some innocent motive. *See United States v. Barfield,* 999 F.2d 1520, 1524 (11th Cir.1993) ("The 'corrupt' requirement—which may also be described as the knowing, intentional or willful requirement—acts as a staunch barrier against prosecutorial overreaching and improper expansion of section 1503. This requirement protects those individuals who are, for example, ... not intending to obstruct the due administration of justice"); *United States v. Haas,* 583 F.2d 216 (5th Cir.1978); *see also United States v. Ogle,* 613 F.2d 233, 239 (10th Cir. 1979). The alleged document destruction and concealment is claimed by the government to have "influenced or impeded" or, at the very least, "attempted to influence or

---

1. *See, e.g., United States v. Craft,* 105 F.3d 1123 (6th Cir.1997); *United States v. London,* 714 F.2d 1558 (11th Cir.1983).

2. Typical of this category are *United States v. Ruggiero,* 934 F.2d 440 (2d Cir.1991) and *United States v. Solow,* 138 F.Supp. 812 (S.D.N.Y.1956).

impede" the development of facts and claims asserted in the *Roberts* litigation. And defendants' conduct is alleged to have impeded the "due administration of justice":

> [T]he words 'due administration of justice' import a free and fair opportunity to every litigant in a pending cause in federal court to learn what he may learn (if not impeded or obstructed) concerning the material facts and to exercise his option as to introducing testimony or such facts. The violation of the law may consist in preventing a litigant from learning facts which he might otherwise learn, and in thus preventing him from deciding for himself whether or not to make use of such facts.

*Wilder v. United States,* 143 F. 433, 441 (4th Cir.1906).

Cases analyzing § 1503 reinforce an understanding that § 1503 reaches an extensive range of misconduct. "The broad scope of the statute and the evils it sought to combat ... was the 'outgrowth of Congressional recognition of the variety of corrupt methods by which the proper administration of justice may be impeded or thwarted ... [which are] limited only by the imagination of the criminally inclined.'" *United States v. Solow,* 138 F.Supp. 812, 815 (S.D.N.Y.1956) (Weinfeld, J.), (quoting *Catrino v. United States,* 176 F.2d 884, 887 (9th Cir.1949)). "[T]he omnibus clause [of § 1503] i[s] broad enough to cover any act committed corruptly, in an endeavor to impede or obstruct justice." *United States v. Brenson,* 104 F.3d 1267, 1275 (11th Cir.), *cert. denied,* — U.S. —, 118 S.Ct. 214, 139 L.Ed.2d 148 (1997) (quoting *United States v. Brand,* 775 F.2d 1460, 1465 (11th Cir.1985)). "The statute [ § 1503] reaches all corrupt conduct capable of producing an effect that prevents justice from being duly administered." *Id.* at 1275 (quoting *United States v. Silverman,* 745 F.2d 1386, 1393 (11th Cir.1984)).

Ordinarily the broad text of § 1503 would be conclusive. Defendants, however, argue that § 1503 must be applied narrowly because its legislative history and the decisions construing it typify a class of cases where the literal text is considerably more expansive than the coverage actually intended by Congress. *See, e.g., Salute v. Stratford Greens,* 136 F.3d 293, 296–97 (2d Cir.1998) ("Courts may adopt a restricted rather than the literal or usual meaning of a statute 'where acceptance of that [literal] meaning would lead to absurd results or would thwart the obvious purpose of the statute.'") (quoting *Helvering v. Hammel,* 311 U.S. 504, 510–11, 61 S.Ct. 368, 85 L.Ed. 303 (1941)); *United States v. X–Citement Video, Inc.,* 513 U.S. 64, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994); *Staples v. United States,* 511 U.S. 600, 605, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994); *Williams v. United States,* 458 U.S. 279, 286, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982) (statute prohibiting the making of false statements to a bank was inapplicable to deposit of a "bad check" because "the Government's interpretation ... would make a surprisingly broad range of unremarkable conduct a violation of federal law"). We thus turn next to the legislative history of the statute.

Section 1503 saw its first incarnation in the Judiciary Act of 1789, which, among other things, initially defined summary contempt power. *See United States v. Reed,* 773 F.2d 477, 485 (2d Cir.1985). However, as a result of perceived judicial abuses of that power, Congress amended the contempt statute in 1831 and limited judicial authority to issue summary contempt findings to cases where misbehavior occurred in, or sufficiently near, the presence of the court "as to obstruct the administration of justice." *Ex parte Savin,* 131 U.S. 267, 276, 9 S.Ct. 699, 33 L.Ed. 150 (1889); *see generally* Nelles & King, *Contempt by Publication in the United States Since the Federal Contempt Statute,* 26 COLUM. L. REV. 525, 530, (1928).

The 1831 amendment also created criminal penalties for obstructive conduct that could not be addressed through the summary contempt power, such as to "corrupt overtures, out of court, to judges, jurors, or witnesses." *Id.* at 531. The creation of such separate criminal penalties was, as one commentator has noted, consistent with the "current fashion in legislation ... to transfer such comparatively remote obstructions of the administrations of justice 'hitherto denominated contempts,' to the category of indictable misdemeanors." *Id.* "Sections 1 and 2 of the Act of March 2, 1931 are now part of our present

statutory scheme as 18 U.S.C. § 401, which condemns obstructive acts in the court's presence, and 18 U.S.C. § 1503, which prohibits contemptuous conduct away from the court, respectively." *United States v. Essex,* 407 F.2d 214, 217 (6th Cir.1969).

The somewhat sketchy legislative history of § 1503 suggests that a prime focus of the current version § 1503 and of prior iterations was to refine the judicial power to address contempts of court. However, nothing in the legislative history demonstrates that its broad language was not intended to cover allegedly "corrupt" conduct in civil litigation that impedes the "due administration of justice." *See Brogan v. United States,* —— U.S. at ——, 118 S.Ct. at 808–09 (holding that simple denial of guilt came within broad language of statute prohibiting making of false statement: "We cannot imagine how it could be true that falsely denying guilt in a government investigation does not pervert a governmental function"). In other words, contrary to defendants' argument, § 1503's inconclusive legislative history does not afford an especially compelling basis for constricting the statute's language.

Moving from legislative history to case law, we find no basis for concluding either that § 1503 has consistently been applied more narrowly than is required by its text or that failing to do so would lead to a wrong result. The case law demonstrates that § 1503 has been repeatedly applied in a wide variety of civil matters. *See, e .g., United States v. Muhammad,* 120 F.3d 688 (7th Cir.1997) (upholding obstruction conviction where defendant, a juror in a civil case, solicited a bribe from a litigant in that case in exchange for a promise to sway the jury); *United States v. London,* 714 F.2d 1558 (11th Cir.1983) (affirming conviction under § 1503 for lawyer's presentation of fraudulent civil judgment to his client after resolution of lawsuit); *Roberts v. United States,* 239 F.2d 467, 470 (9th Cir.1956) ("obstruction of justice statute is broad enough to cover the attempted corruption of a prospective witness in a civil action in a Federal District Court"); *Wilder v.. United States,* 143 F. at 440 (rejecting contention that obstruction of justice in civil litigation is not an offense against the United States).

At the same time, a long line of cases holds that the willful destruction or concealment of documents sought in grand jury proceedings violates § 1503. *See, e.g., United States v. Ruggiero,* 934 F.2d 440, 446 (2d Cir.1991); *United States v. Gravely,* 840 F.2d 1156, 1160 (4th Cir.1988); *United States v. Shannon,* 836 F.2d 1125, 1128–29 (8th Cir.1988); *United States v. Lench,* 806 F.2d 1443, 1445 (9th Cir.1986); *United States v. Faudman,* 640 F.2d 20, 23–24 (6th Cir.1981); *United States v. Walasek,* 527 F.2d 676, 681 (3d Cir.1975); *see also United States v. Laurins,* 857 F.2d 529 (9th Cir.1988) (upholding conviction under analogous statute, 18 U.S.C. § 1505, where defendant concealed documents sought by IRS summons).

Defendants argue that this extensive body of cases establishes that to the extent that § 1503 is applied to the concealment or destruction of documents, its reach is limited to acts occurring in the context of such proceedings as grand jury investigations. Yet, again, nothing in these cases or in the language of the statute requires such a result. The omnibus clause of § 1503 is broad and does not, on its face, refer to grand jury proceedings. While a grand jury proceeding certainly complies with the Supreme Court's requirement that there be some pending judicial proceeding for the "due administration of justice" element of the statute to be met, *see Pettibone v. United States,* 148 U.S. 197, 207, 13 S.Ct. 542, 37 L.Ed. 419 (1893), nothing in the statute or its legislative history limits the definition of a pending judicial proceeding. The frequency with which cases reported under § 1503 involve grand jury proceedings probably indicates only that this area is one that attracts the attention of prosecutors far more frequently than matters of civil litigation. The pendency of a civil action—such as *Roberts* —in federal district court also satisfies the "pending proceeding" requirement, and the holdings of the cases in the context of a grand jury proceeding—that willful concealment and destruction of documents amount to § 1503 obstruction—therefore apply with equal force to both civil and criminal cases.

Of course, there are a great many good reasons why federal prosecutors should be reluctant to bring criminal charges relating to conduct in ongoing civil litigation. Civil litigation typically involves parties protected by counsel who bring frequently exaggerated claims that, under the supervision of a judicial officer, are narrowed and ultimately compromised during pretrial proceedings. Prosecutorial resources would risk quick depletion if abuses in civil proceedings—even the most flagrant ones—were the subject of criminal prosecutions rather than civil remedies. Thus, for numerous prudential reasons, prosecutors might avoid entering this area. But that is quite different from concluding that § 1503 precludes their doing so.

Defendants contend that they were not subpoenaed or directed by a court to furnish the information sought by the *Roberts* plaintiffs in their discovery requests. They also submit that the Indictment is overbroad, charging them not only with concealing and destroying documents requested by the *Roberts* plaintiffs, but also with concealing and destroying documents likely to be requested by them. But the law is clear that neither a subpoena nor a court order directing the production of documents must be issued or served as a prerequisite to a § 1503 prosecution, and that the concealment and destruction of documents likely to be sought by subpoena is actionable under the statute. *See, e.g., Ruggiero,* 934 F.2d at 450 (destroying documents in anticipation of a subpoena can constitute obstruction); *Gravely,* 840 F.2d at 1160 (under § 1503, documents destroyed do not have to be under subpoena; it is sufficient if the defendant is aware that the grand jury will likely seek the documents in its investigation); *see also Wilder,* 143 F. at 442 (inducing witness not under subpoena not to testify was actionable as an obstruction under the statute: "In the absence of a federal statute of the scope of this clause, a party to a pending civil suit in federal court, so long as process for persons intended to be used as witnesses by his adversary had not been issued, could legally induce all such persons to conceal themselves or otherwise evade service of process. But that such acts, if successful, would impede and obstruct the administration of justice, is quite apparent").

Defendants maintain that *United States v. Aguilar,* 515 U.S. 593, 115 S.Ct. 2357, 132 L.Ed.2d 520 (1995), removes their conduct from the reach of § 1503. In *Aguilar,* a federal district court judge made false statements to FBI agents during the course of a grand jury investigation and was convicted for obstruction of justice under § 1503. Holding that in § 1503 prosecutions the Government must show a "nexus" between the obstructive act and the proceeding at issue, the Supreme Court reversed the defendant judge's conviction, finding no proof that the agents had acted as an arm of the grand jury or that the grand jury had ever summoned the testimony of the agents.

Here, in contrast, the requisite nexus exists—there is no uncertainty that the alleged destruction of documents impaired a pending judicial proceeding. Indeed, withholding and destroying relevant documents in a lawsuit means that the documents will never be considered by opposing litigants, their counsel or the Court. This conduct necessarily and fundamentally compromises federal court proceedings and, in contrast to *Aguilar,* has the "natural and probable effect" of interfering with the due administration of justice. *See Aguilar,* 515 U.S. at 598.

 Next, defendants argue that the Indictment violates due process because it amounts to a retroactive extension of the law, and deprives them of "fair warning" that their conduct was criminal. A statute gives no "fair warning" if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972) (quoting *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989 (1954)). In this case, however, defendants' conduct falls well within the unambiguous text of § 1503 and consequently gave the defendants ample warning that their conduct was prohibited. *See United States v. Howard,* 569 F.2d 1331, 1336–37 (5th Cir.1978) ("Since the omnibus clause of the statute quite clearly proclaims that all obstructions of justice are prohibited, we con-

clude that section 1503 gives 'fair notice' of the offending conduct") (citations omitted).

Moreover, as demonstrated above, long before the defendants engaged in the conduct charged in the Indictment, the federal courts had construed § 1503 to embrace the obstruction of civil proceedings, the knowing suppression of material facts in civil proceedings, and, generally, the concealment and destruction of documents sought or likely to be sought in pending proceedings. *See* pages 8 to 10, *supra.* Therefore, through the statute's language and the applicable case law, the defendants were plainly on notice that § 1503 would reach their conduct.

Additionally, because the defendants' conduct as charged is, by any reasonably objective standard, wrong, the "fair warning" argument does not apply. *See, e.g., United States v. Griffin,* 589 F.2d 200, 207 (5th Cir.1979) ("The requirement that statutes give fair notice cannot be used as a shield by one who is already bent on serious wrongdoing") (citing *United States v. Ragen,* 314 U.S. 513, 524, 62 S.Ct. 374, 86 L.Ed. 383 (1942); *see also Brenson,* 104 F.3d at 1281). Given the text of the statute, the case law interpreting it, and the wrongful nature of the conduct charged, the application of § 1503 to the conduct charged here does not amount to a retroactive extension of the law.

■ Finally, defendants claim that the facts underlying the charges present nothing more than a civil discovery dispute and that if they engaged in discovery abuses, the federal courts possess broad statutory and inherent powers under Fed.R.Civ.P. 37 and 28 U.S.C. § 1927 to impose civil sanctions, including the imposition of monetary penalties, the entering of a default, and the dismissal of defenses.

This case, however, goes beyond civil discovery abuse remediable through civil sanctions. Defendants here are not charged with concealing and destroying documents they incorrectly concluded were not sought, or erroneously thought to be irrelevant or burdensome. Rather, they are charged with

seeking to impair a pending court proceeding through the intentional destruction of documents sought in, and highly relevant to, that proceeding. For a variety of reasons, the panoply of tools used to address civil discovery problems such as monetary sanctions, orders of preclusion, or dismissal of claims or defenses might at times be insufficient. Civil discovery rules are primarily directed to the parties and their counsel. Here, the Indictment does not involve the misconduct of Texaco (the defendant in the *Roberts* litigation) or its counsel but that of individuals who appear to have been acting independently of their employer and its attorneys. Thus, it seems that the parties and their counsel in *Roberts* were apparently acting consistently with the requirements of the discovery provisions of the Federal Rules of Civil Procedure. Under these unusual circumstances, the government's contention that civil remedies are inadequate seems to us to be correct.

The structure of the discovery provisions of the Rules of Civil Procedure further supports this conclusion. First, Rule 37, insofar as it applies to document discovery, provides for sanctions only after a party has initially failed to make the disclosures required by Rule 26(a), which incorporates by reference Rule 34. *See* Fed.R.Civ.P. Rules 37, 26, and 34. In other words, sanctions are unavailable under Rule 37 unless the aggrieved party has first issued a document request under Rule 34. Where, as here, a willful destruction of relevant documents allegedly occurs during litigation but outside the confines of a Rule 34 request, Rule 37 sanctions may be inadequate.

Second, Rule 37 sanctions are designed for a limited purpose—to further the ends of the Federal Rules of Civil Procedure.[3] Their purpose is to police discovery, to curb both negligent and intentional discovery lapses, and to keep the parties from benefitting in the lawsuit as a result of their own misconduct—all with the goal of insuring "the just, speedy, and inexpensive determination" of

---

**3.** The scope and purpose of those rules is set forth in Fed.R.Civ.P. 1:

These rules govern the procedure in the United States district courts in all suits of a civil

nature ... They shall be construed and administered to secure the just, speedy and inexpensive determination of every action.

the particular lawsuit. As such, civil sanctions—in contrast to criminal ones—are only marginally punitive. Unlike criminal sanctions, civil sanctions are inadequate to effect either general or specific deterrence, or to protect the integrity of the court and the due administration of justice, especially under egregious circumstances such as are alleged in the Indictment.

Finally, precisely because Rule 37 sanctions and criminal sanctions serve different purposes and are addressed to different ends, they are not mutually exclusive. Where conduct in the context of discovery is contumacious, it may very well warrant both types of sanctions, and it is well established that a court may impose both civil and criminal sanctions in connection with the same contumacious behavior. *See Yates v. United States,* 355 U.S. 66, 74, 78 S.Ct. 128, 2 L.Ed.2d 95, (1957); *Ochoa v. United States,* 819 F.2d 366, 369 (2d Cir.1987).

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the Indictment on the ground that it does not state an offense is denied.

**SO ORDERED.**