**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Lawrence Joseph MAYER,
Defendant-Appellant.**

**No. CA 84–1000.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 13, 1984.

Decided Nov. 12, 1985.

Rhonda L. Repp, Asst. U.S. Atty., Tucson, Ariz., for plaintiff-appellee.

Frank R. Zapata, Asst. Federal Public Defender, Tucson, Ariz., for defendant-appellant.

Before FAIRCHILD *, FLETCHER and CANBY, Circuit Judges.

PER CURIAM:

Mayer appeals from his sentence following conviction by a jury of four counts of using false documents in a matter within the jurisdiction of the district court, in violation of 18 U.S.C. § 1001 (1982). He was charged with submitting fictitious letters of recommendation for the district court to consider when it sentenced him on an unrelated conviction. We reverse.

Before entering the courtroom for his sentencing hearing, Mayer gave his attorney four letters of recommendation for submission to the court. The attorney gave the letters to the judge's secretary. The judge testified that he read the letters prior to the sentencing hearing and that his sentencing was influenced to some degree by the letters. The purported authors of the letters testified that they had not signed or authorized the letters, and there was other evidence that the letters were spurious.

Mayer's pretrial motion to dismiss the indictment was denied. A guilty verdict was returned in his first trial. Mayer then moved successfully for a new trial. Upon retrial he was again found guilty on all four counts.

I

Title 18, Section 1001 provides:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more that $10,000 or imprisoned not more than five years, or both.

The text of section 1001 could be interpreted not to apply to any false statements or false documents presented in a matter within the jurisdiction of a court, especially in light of 18 U.S.C. § 6 (1982). Section 6 states that the term "department means one of the executive departments ... unless the context shows that such term was intended to describe the executive, legisla-

---

* Honorable Thomas E. Fairchild, Senior United States Circuit Judge for the Seventh Circuit,  sitting by designation.

tive or judicial branches of government." However, the Supreme Court has examined the legislative history of the statute and has concluded that " 'department' as used in this context, was meant to describe the executive, legislative and judicial branches of the Government." *United States v. Bramblett,* 348 U.S. 503, 509, 75 S.Ct. 504, 508, 99 L.Ed. 594 (1955) (involving false representations by a congressman to the Disbursing Office of the House of Representatives).

The Supreme Court's construction of the statute in *Bramblett* did not suggest that any exception existed for a false statement or document offered in the course of a judicial proceeding and did not suggest any rationale for setting the boundaries of such an exception. However, lower courts have for many years since *Bramblett* suggested or found that such an exception exists.

In *Morgan v. United States,* 309 F.2d 234 (D.C.Cir.1962), *cert. denied,* 373 U.S. 917, 83 S.Ct. 1306, 10 L.Ed.2d 1084 (1963), the D.C. Circuit reviewed a conviction under section 1001 for concealment of material facts in a matter within the jurisdiction of the district court. Morgan, who was not a member of the bar, held himself out to be a Mr. Harris, who was a member, and made numerous appearances representing defendants. He was charged and convicted of three section 1001 offenses. The court of appeals drew a distinction between courts' "administrative," or "housekeeping," functions and their "judicial" or "adjudicative" functions. Judge Bazelon, writing for the court, made it plain that Morgan's misrepresentations implicated only the district court's administrative functions. The convictions were affirmed, but the court limited its holding to deal only with the type of misrepresentation with which Morgan was charged:

> We are certain that neither Congress nor the Supreme Court intended the statute to include traditional trial tactics within the statutory terms "conceals or covers up." We hold only, on the authority of

the Supreme Court construction, that the statute does apply to the type of action with which appellant was charged, action which essentially involved the "administrative" or "housekeeping" functions, not the "judicial" machinery of the court. *Id.* 309 F.2d at 237. In reading *Morgan,* we sense a concern that applying section 1001 to positions taken before a court during litigation could inhibit vigorous advocacy of parties' interests, particularly those of a defendant in a criminal case.

In 1967, the Sixth Circuit squarely held that "§ 1001 does not apply to the introduction of false documents as evidence in a criminal proceeding." *United States v. Erhardt,* 381 F.2d 173, 175 (6th Cir.1967). Erhardt had testified in his own behalf in an earlier criminal case and had introduced a receipt to corroborate his testimony. He was indicted under section 1001 for introducing the receipt, which was allegedly false, and was also charged with perjury for testifying falsely. The Sixth Circuit reversed his conviction on both counts. The court decided that the then-existing two-witness rule had not been satisfied as to the perjury.[1] The court also read *Morgan* to hold that section 1001 does not apply to falsification involving the adjudicative functions of the court. *Id.* at 175.

In 1974, the Second Circuit reversed a section 1001 conviction for filing a false affidavit during a civil action in federal court to which the Government was not a party. *United States v. D'Amato,* 507 F.2d 26, 27 (2d Cir.1974). The court concluded, after considering the history of the statute, that section 1001 "does not apply where the Government is involved only by way of a court deciding a matter in which the Government or its agencies are not involved." *Id.* at 28. *Morgan* and *Erhardt* were cited, although the court noted that *D'Amato* provided a stronger case for not applying section 1001 "than *Erhardt,* [since] in a criminal case where the Government is a party, it could at least be argued that the Government is defrauded by the false statement proffered." *Id.* at 29.

---

1. Congress has since abolished the "two-witness" rule for proof of perjury prosecutions. *See* 18

U.S.C. § 1623(e) (1982); *United States v. Jessee,* 605 F.2d 430, 431 (9th Cir.1979).

In 1979 the Fifth Circuit subscribed to the view that there is an area of judicial activity to which section 1001 is not applicable. *United States v. Abrahams*, 604 F.2d 386, 393 (5th Cir.1979). Abrahams was arrested in Massachusetts on a federal warrant issued in Michigan. In a colloquy before a magistrate on the subject of bail pending a removal hearing, Abrahams made false, unsworn statements concerning his identity. *Id.* at 390–91. He was indicted in Massachusetts for violation of section 1001. The district court denied a motion to dismiss based on the judicial function exception, but for reasons not here material transferred the case to the Western District of Texas for trial. *United States v. Abrahams*, 453 F.Supp. 749, 750–54 (D.Mass.1978). Abrahams was convicted. On appeal, the Fifth Circuit reversed. Among other reasons for reversal, the court held, relying on *Erhardt* and *Morgan,* that "§ 1001 is not a proper basis for charging a defendant with making a false statement in a judicial proceeding." 604 F.2d at 393. The court also held that an appearance before a magistrate for a removal and bail hearing was a judicial proceeding.

Thus, the adjudicative functions exception to section 1001 has been suggested or recognized by appellate decisions since 1962, not long after the Supreme Court decided that section 1001 applies to matters within the jurisdiction of the judicial branch.[2] In these twenty-three years, there has been no response on the part of Congress either repudiating the limitation or refining it. It therefore seems too late in the day to hold that no exception exists.

This court has indicated generally that section 1001 should not be extended "to its literal breadth," and should not be permitted to swallow up perjury and other federal statutes that proscribe making false representations to specific government agencies or concerning certain government activities. *United States v. Bedore,* 455 F.2d 1109, 1110 (9th Cir.1972).

Instead, properly construed, [section 1001] serves as a catch-all, reaching those false representations that might "substantially impair the basic functions entrusted by law to [the particular] agency," but which are not prohibited by other statutes. The legislative history reveals no evidence of an intent to pyramid punishment for offenses covered by another statute as well as by § 1001.

*United States v. Rose,* 570 F.2d 1358, 1363 (9th Cir.1978).[3]

We have addressed issues relating to the adjudicative functions exception in three

---

**2.** Any reasons underlying the recognition of a "judicial functions" exception to the application of § 1001 in the judicial branch would appear to apply to quasi-judicial functions (as opposed to "housekeeping" or "administrative" functions) performed elsewhere. Adjudicatory hearings before agencies in the Executive Branch and proceedings before legislative courts are very similar in function and procedure to proceedings in federal courts. Procedure is often similar in legislative and quasi-legislative hearings. No similar exception to § 1001 has been recognized in such proceedings, however. *See Stein v. United States,* 363 F.2d 587, 589–90 (5th Cir.), *cert. denied,* 385 U.S. 934, 87 S.Ct. 294, 17 L.Ed.2d 214 (1966) (Tax Court constitutes "department or agency of the United States" under § 1001; the introduction of false documents into evidence in a tax court proceeding violates § 1001); *see generally, Project White Collar Crime: A Study of Law,* 19 Am.Crim.L.Rev. 173, 317–29 (1981); *White Collar Crime: 1982 Update,* 20 Am.Crim.L.Rev. 291, 321–22 (1982); *White Collar Crime: 1983 Update,* 21 Am.Crim. L.Rev. 179, 219–22 (1983).

**3.** We have held, however, that the mere fact that another statute proscribes the same conduct does not necessarily preclude the application of section 1001. *United States v. Duncan,* 693 F.2d 971, 975 (9th Cir.1982). In the present case, the defendant's submission of false documents may have been punishable as contempt (18 U.S.C. § 401 (1982)) or obstruction of justice (18 U.S.C. § 1503 (1982)). Those statutes cover a much wider range of conduct than false representation or use of false documents in a judicial proceeding.

18 U.S.C. § 401 provides in part that:

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice....

18 U.S.C. § 1503 provides in part that:

Whoever corruptly ... endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than

recent cases. In *United States v. Powell*, 708 F.2d 455 (9th Cir.1983), *rev'd on other grounds*, —— U.S. ——, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), the defendant applied for leave to proceed *in forma pauperis* and for appointment of counsel. Powell was questioned by the magistrate about her financial ability to obtain counsel. She orally responded that she had no more than $400 in bank accounts. This response was then entered on the Financial Statement (Criminal Justice Act Form 23), and Powell signed it. Immediately under the signature space was a statement saying:

> Warning: A false or dishonest answer to a question in this affidavit may be punishable by fine or imprisonment, or both.

It was subsequently shown that Powell had over $20,000 in a bank account. We affirmed her section 1001 conviction. *Id.* at 457.

We noted that other courts "restrict [the] use" of section 1001 in the judicial branch to housekeeping as opposed to adjudicative functions, citing *Abrahams*, but we were "not persuaded that there [was] any restriction against [the statute's] use" in a case such as Powell's, since her alleged "misrepresentation did not occur during a judicial proceeding." *Id.* We held that the matter of deciding that a defendant is indigent and entitled to counsel involves a housekeeping function.

In *United States v. Gonzalez-Mares*, 752 F.2d 1485 (9th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 3540, 87 L.Ed.2d 663 (1985), we upheld a section 1001 conviction based on a false statement to a probation officer by a defendant who was about to plead guilty on an unrelated offense. *Powell* was cited for the proposition "that § 1001 is applicable to matters before the judiciary." *Id.* at 1493. No reference was made to the distinction between "housekeeping" and "adjudicative" functions that was acknowledged in *Powell*, and the point does not appear to have been argued. Yet the result in *Gonzalez-Mares* is not inconsistent with an adjudicative function exception to section 1001. The statement that

was held to violate section 1001 was made to a probation officer so that he could make a sentencing recommendation to the court. The defendant's interview with the probation officer was not itself adjudicative; it was the magistrate who was to make the ultimate judicial disposition on sentencing.

The defendant in *Gonzalez-Mares* was also charged with making a false statement to the magistrate at the time of sentencing, but that statement was prosecuted as an obstruction of justice in violation of 18 U.S.C. § 1503 (1982). The decision to prosecute under section 1503 was consistent with a scheme in which frauds perpetrated upon a court in its adjudicative capacity must be prosecuted as perjury, obstruction of justice, or contempt, and not as false statements in violation of section 1001.

Most recently, in *United States v. Plascencia-Orozco*, 768 F.2d 1074 (9th Cir. 1985), we upheld the section 1001 conviction of an individual who orally gave a false name to the presiding magistrate at his arraignment on unrelated charges, in order to conceal his prior criminal record. *Id.* at 1075. Since the defendant was not under oath at the time he lied, he could not be indicted for perjury under 18 U.S.C. § 1621 (1982). We stated our agreement with the D.C. Circuit's decision in *Morgan* "that application of section 1001 should be limited to matters arising in judicial proceedings that can be characterized as 'administrative' or 'housekeeping' functions of the court." *Id.* at 1076. Since we concluded that the magistrate's inquiry concerning the defendant's identity was "not an exercise of the magistrate's judicial powers, but was a function of [his] administrative duties," and that "[n]o trial strategy would justify the [defendant's decision to] misrepresent [his] identity," we held that section 1001 had been validly applied.

In the present case, we conclude that Mayer's sentencing hearing constituted a "judicial proceeding" for purposes of section 1001, and that the district judge's sentencing determination constituted an adjudicative function. The judge's role in sentencing is not a housekeeping or adminis-

$5,000 or imprisoned not more than five years, or both.

trative duty, but is an extension of the defendant's trial itself. Therefore, misrepresentations made during the sentencing hearing would not be covered by section 1001.

However, the government contends that even if section 1001 does not apply to representations made to the court during the sentencing hearing itself, it applies to documents regarding sentencing that are submitted to the judge in chambers. The government argues that there is a distinction between misrepresentations to judges performing adjudicative functions *within a courtroom*, and misrepresentations to judges who are performing the same adjudicative functions *outside the courtroom.*

Yet this is a distinction without a difference. The fraudulent letters in Mayer's case were submitted to the judge and were intended to influence him in sentencing. It makes no difference whether the judge received and read the letters before or during the sentencing proceeding. The letters were intended to influence the outcome of a judicial proceeding, even if they were not presented to the court within the four walls of the courtroom. We see no basis for distinguishing between representations or submissions to a judge in chambers to influence his judicial decisions and representations made in open court. We cannot adopt the government's argument that section 1001 applies to the informal submissions in this case even if it would not apply to submissions in open court.

Since we conclude that the sentencing process was part of the trial court's adjudicative functions, and that regardless of how they were submitted, Mayer's fictitious letters of recommendation were intended to serve as evidence in the court's sentencing determination, section 1001 does not cover Mayer's conduct. We therefore reverse Mayer's conviction under section 1001.

REVERSED.

FAIRCHILD, Senior Circuit Judge, concurring.

The origin of the adjudicative functions exception relied on here was dictum in *Mor-gan*, 309 F.2d 234, 237 (D.C.Cir.1962), *cert. denied*, 373 U.S. 917, 83 S.Ct. 1306, 10 L.Ed.2d 416 (D.C.Cir.1963). The statement was "that neither Congress nor the Supreme Court intended the statute to include traditional trial tactics within the statutory terms 'conceals or covers up.'" This statement has somehow flowered into the broad exception now being recognized, yet virtually none of the significant decisions has really defined the exception nor expounded a rationale.

The one decision which sets forth a rationale is *United States v. D'Amato*, 507 F.2d 26 (2d Cir.1974). That opinion, however, dealt with a false affidavit in a civil action to which the government was not a party, and indicated it is at least arguable that § 1001 will apply to falsity submitted in a criminal case or a civil case to which the government is a party.

Because the decisions provide no policy or other reasons underlying the exception as applied to criminal cases, I see no compelling reason for extending the exception beyond the exact holdings of those cases. None of the decisions recognizing the exception has dealt with submission of documents to the court at the sentencing stage, or indeed at any stage subsequent to trial.

I do not agree with the view that this court's opinion in *United States v. Gonzales-Mares*, 752 F.2d 1485 (9th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 3540, 87 L.Ed.2d 663 (1985) is consistent with a judicial proceedings exception to § 1001. Although *Gonzales-Mares* involved a false statement to a probation officer rather than the magistrate, the purpose of the statement was to influence sentencing, as in the present case. I see no reasoned basis to justify a difference in result because the false information in one case was furnished to an administrative functionary to influence his recommendation to the judge but in the other was furnished directly to the judge.

In the course of this panel's consideration of the case I have supported affirm-

ance. I now concur in reversal only in deference to the very recent pronouncement of this court (although arguably dictum) "that application of section 1001 should be limited to matters arising in judicial proceedings that can be characterized as 'administrative' or 'housekeeping' functions of the court." *United States v. Plascencia-Orozco,* 768 F.2d 1074 (9th Cir. 1985).