957 F.2d 749
 60 USLW 2560, 1992-1 Trade Cases P 69,736
 UNITED STATES of America, Plaintiff-Appellant,
v.
DEFFENBAUGH INDUSTRIES, INC., doing business as Deffenbaugh
Disposal Services, Inc.; Ronald D. Deffenbaugh;
Joseph E. Wehmeyer, Defendants-Appellees.
UNITED STATES of America, Plaintiff-Appellee,
v.
DEFFENBAUGH INDUSTRIES, INC., doing business as Deffenbaugh
Disposal Services, Inc., Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ronald D. DEFFENBAUGH, Defendant-Appellant.
 Nos. 91-3187, 91-3199, 91-3200.
 United States Court of Appeals,
Tenth Circuit.
 Feb. 18, 1992.
Rehearing Denied March 20, 1992.
 
 James W. Lowe, Attorney (James F. Rill, Asst. Atty. Gen., Charles A. James, Deputy Asst. Atty. Gen., John J. Powers, III, and David Seidman, Attorneys, Of Counsel, David A. Blotner, Dwight Dickinson, and David J. Lang, Attorneys, with him on the briefs), Dept. of Justice, Washington, D.C., for U.S.
 Gordon Ankney of Thompson & Mitchell, St. Louis, Mo. (Richard D. Rhyne of Craft, Fridkin & Rhyne, Kansas City, Mo., with him on the briefs, for Deffenbaugh Industries, Inc. and Richard J. Braun of Richard J. Braun & Associates, Nashville, Tenn., for Ronald D. Deffenbaugh, also with him on the briefs).
 Before HOLLOWAY, LOGAN and BALDOCK, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 In No. 91-3187 the United States filed an interlocutory appeal, permitted by 18 U.S.C. § 3731, of the district court's order dismissing Count 10 of the indictment against defendants Deffenbaugh Industries, Inc., and Ronald D. Deffenbaugh. That count charged defendants with willfully and knowingly making and submitting to the Department of Justice "false, fictitious and fraudulent statements and representations about material facts in a matter within the jurisdiction of the Department of Justice" in violation of 18 U.S.C. § 1001. In cross-appeal Nos. 91-3199 and 91-3200 defendants filed an interlocutory appeal of the district court's denial of various motions. In the cross-appeals, however, the only issue briefed was the denial of a motion seeking access to the record of the number of persons concurring in the finding of the indictment, and at oral argument counsel conceded that was the only issue being pursued in the cross-appeals.
 
 
 2
 * No. 91-3187
 
 
 3
 We must consider the United States' appeal, although it is interlocutory, because it is explicitly permitted by 18 U.S.C. § 3731. See United States v. Wilson, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975) (upholding constitutionality of the statute). The issue presented in the United States' appeal--whether the defendants' alleged conduct is prosecutable under 18 U.S.C. § 1001--is a question of law, subject to de novo review by this court. United States v. Lawson, 809 F.2d 1514, 1517 (11th Cir.1987); see also Allis-Chalmers Credit Corp. v. Tri-State Equipment, Inc. (In re Tri-State Equip., Inc.), 792 F.2d 967, 970 (10th Cir.1986) (questions of law are subject to de novo review).
 
 
 4
 In Count 10 of the indictment, the United States contended that defendants violated the false statements statute, 18 U.S.C. § 1001, when they submitted a false affidavit of compliance in response to a grand jury subpoena duces tecum issued by a federal grand jury.[1] The subpoena required defendant Deffenbaugh Industries to produce all documents reflecting payments to its creditors. The subpoena is not part of the record, but the government represents that the subpoena ordered the documents to be delivered directly to the grand jury itself. Reply Brief for Appellant at 1 n. 1. It was not the subpoena, but a letter from a government lawyer, which gave Deffenbaugh Industries the option of submitting the documents to the Antitrust Division of the Department of Justice in Washington, D.C., rather than to the grand jury.[2]
 
 
 5
 Defendants chose to submit the documents to the Department of Justice and were required by the Department, in accordance with its usual procedure, to sign a form affidavit prepared by the Department stating that "[t]o the best of my knowledge, information and belief" the documents sent "constitute all the documents in the possession, custody or control of the Company that fall within the terms of the subpoena and compliance with the subpoena has been fully and completely complied with." Affidavit of Compliance, Motion to Supplement Record on Appeal, filed June 3, 1991, app. A. The government alleged that defendants intentionally withheld production of certain documents, and, therefore, the affidavit of compliance constituted a false statement under 18 U.S.C. § 1001.
 
 
 6
 Defendants made various arguments concerning their compliance. The only argument we address, and which we find controlling, is that the affidavit under the circumstances here is not within the ambit of 18 U.S.C. § 1001. That section says specifically that to constitute a false statement it must be "in any matter within the jurisdiction of any department or agency of the United States." Defendants assert that the affidavit is not on a matter within the jurisdiction of the Department of Justice but was one within the jurisdiction of the grand jury itself. The government contends that because its role is to aid and abet the activities of the grand jury, it has the power to require the affidavit and to punish under 18 U.S.C. § 1001 any falsity.
 
 
 7
 This is an issue of first impression in an appellate court so far as we can ascertain. We have found one district court case in which a witness was indicted under § 1001 for allegedly false answers to questions propounded to him by a grand jury. United States v. Allen, 193 F.Supp. 954 (S.D.Cal.1961). The court there held the indictment improper "because the federal Grand Jury is not an 'agency of the United States' within the meaning of § 1001, and because this statute was not intended to cover the situation in which defendant is accused of having made a false and fraudulent reply when interrogated by the Grand Jury." Id. at 959. The United States Attorneys' Manual, § 9-69.267 indicates that "[p]rosecutions should not be brought under 18 U.S.C. § 1001 for false statements submitted in federal court proceedings," but rather such prosecutions should be under 18 U.S.C. §§ 1503 and 1621. Federal grand juries, of course, are called by and impaneled before federal district courts, 18 U.S.C. §§ 3321, 3331; their proceedings are governed by the Federal Rules of Criminal Procedure, applicable to proceedings in federal courts. See Fed.R.Crim.P. 1, 6, 16(a). See In re Grand Jury Empanelled, 597 F.2d 851, 856-57 (3d Cir.1979) (grand jury investigation is a 'criminal proceeding' for purposes of the federal rules); Bacon v. United States, 449 F.2d 933, 939-41 (9th Cir.1971) (same).
 
 
 8
 "The Constitution itself makes the grand jury a part of the judicial process." Cobbledick v. United States, 309 U.S. 323, 327, 60 S.Ct. 540, 542, 84 L.Ed. 783 (1940). Most circuits have recognized a "judicial function" exception to the application of § 1001, based on finding that a court is not a "department or agency," and that "section 1001 should not be extended 'to its literal breadth,' and should not be permitted to swallow up perjury." United States v. Mayer, 775 F.2d 1387, 1390 (9th Cir.1985) (quoting United States v. Bedore, 455 F.2d 1109, 1110 (9th Cir.1972)); see also United States v. Masterpol, 940 F.2d 760, 766 (2d Cir.1991); United States v. Holmes, 840 F.2d 246, 248-49 (4th Cir.), cert. denied, 488 U.S. 831, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988); United States v. Lawson, 809 F.2d 1514, 1519 (11th Cir.1987); United States v. Abrahams, 604 F.2d 386, 393 (5th Cir.1979); United States v. Erhardt, 381 F.2d 173, 175 (6th Cir.1967) (holding § 1001 does not apply to the introduction of false documents as evidence in a criminal proceeding). The Supreme Court has acknowledged this line of authority, but expressed "no opinion on the validity of this line of cases." United States v. Rodgers, 466 U.S. 475, 483 n. 4, 104 S.Ct. 1942, 1948 n. 4, 80 L.Ed.2d 492 (1984). We are satisfied grand jury investigations are criminal proceedings that are a part of the judicial process. Particularly given the government's concession that false statements made to the grand jury are not prosecutable under § 1001, see Reply Brief for Appellant at 7 n. 5, we have no problem holding § 1001 inapplicable to the case before us unless Rodgers or some other authority compels a different conclusion.
 
 
 9
 In Rodgers the Supreme Court has found jurisdiction under § 1001 when there is either a statutory basis for an agency or department's request for information, 466 U.S. at 481, 104 S.Ct. at 1947, or when the agency or department "has the power to exercise authority in a particular situation." Id. at 479, 104 S.Ct. at 1946. In this case, the Department of Justice does not have a statutory basis to require or request the information sought by the subpoena or the affidavit, nor does it have a statutory basis to require an affidavit upon receipt of the discovery. See 1 Sarah S. Beale & William C. Bryson, Grand Jury Law and Practice § 6:10, at 6-60 (1986) (hereafter Beale & Bryson ) ("the federal prosecutor has no independent subpoena power.... subpoenas for witnesses or physical evidence are issued under the authority of the court in the name of the grand jury"). The grand jury's subpoenas are issued pursuant to Fed.R.Crim.P. 17, which contemplates a response directly to the grand jury, as the subpoena here apparently stated directly. The alternative of allowing the response to be sent to the prosecutors directly is apparently a practice that has developed as an administrative convenience. It is not discouraged by the grand juries themselves nor condemned by courts because of the special role of the prosecutor to assist the grand jury by organizing and evaluating evidence and giving it legal advice. See Beale & Bryson § 6:02, at 6-4; United States v. Ciambrone, 601 F.2d 616, 622-23 (2d Cir.1979).
 
 
 10
 "Because no judicial officer is present to preside over the daily operation of the grand jury and the accused and his counsel are not generally present, the prosecutor's role is necessarily different in grand jury proceedings than at trial. In addition to presenting the government's case, prosecutors also perform some quasi-judicial functions in the grand jury setting."
 
 
 11
 Beale & Bryson § 6.02, at 6-4.
 
 
 12
 The key question is whether the role of the prosecutor as this unique kind of aide to the grand jury amounts to a grant of "power to exercise authority" to the Justice Department within the contemplation of Rodgers for application of § 1001. The district court answered "no." While it is not an easy question, given the differing views of the courts in somewhat analogous situations, we hold that the district court correctly decided the issue.
 
 
 13
 The government attorneys prepare and secure the issuance of subpoenas. See, e.g., First Nat'l Bank v. United States Dep't of Justice, 865 F.2d 217, 219-20 (10th Cir.1989). Their power in the grand jury context, however, flows from the authority of the grand jury. Thus, when the Justice Department accepted the subpoenaed materials and required the affidavit, it was not acting upon its own authority; it was acting under the umbrella of the grand jury. An allegedly false statement given in response to a grand jury subpoena is more reasonably characterized as given in a court proceeding than in response to the Justice Department's "power to exercise authority." This does not appear to us to be a case of "authority" to act delegated to the Department of Justice in the sense contemplated in Rodgers.[3] Had the defendants chosen to satisfy the subpoena by presenting the documents directly to the grand jury, and made false statements directly to that body, the defalcation would not have been a matter within the jurisdiction of the Department of Justice for purposes of § 1001, but instead would have been a matter for prosecution under 18 U.S.C. § 1621, § 1503, or perhaps § 1623.
 
 
 14
 We are also reluctant to allow the Justice Department, which apparently initiated the discovery subpoena, the power to prosecute under § 1001 persons who allegedly did not comply completely. There is considerable room for error or misunderstanding in compliance with subpoenas duces tecum. Parties considering discovery requests in any litigation situation, including grand jury proceedings, often will interpret such commands narrowly. To give the Department of Justice power to prosecute allegedly false statements under § 1001 in connection with a form affidavit of compliance with a subpoena would give the government a more powerful weapon than we believe Congress intended. See United States v. D'Amato, 507 F.2d 26, 30 (2d Cir.1974) (discussing congressional intent concerning § 1001). The instant case is not unlike that in United States v. Medina De Perez, 799 F.2d 540 (9th Cir.1986), in which the government tried unsuccessfully to extend § 1001 to false answers given in DEA agent interviews with persons suspected of crimes. As the United States Attorneys' Manual recognizes, other statutes provide sufficient authority to punish perjury or obstruction of the grand jury's processes.
 
 
 15
 Accordingly, we AFFIRM the district court's determination that the allegedly false statements in the affidavit of compliance are not within the jurisdiction of the Department of Justice for purposes of § 1001, and its dismissal of Count 10 of the indictment.
 
 II
 Nos. 91-3199 and 91-3200
 
 16
 * In the cross-appeals defendants challenge the district court's refusal to allow defendants access to the record of the number of jurors concurring in the indictment. The government argues that we lack jurisdiction to hear this appeal from an interlocutory collateral order. We hold that we have jurisdiction, however, under the collateral order exception first articulated in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). This court has recognized the three part test that must be satisfied in order to accept an interlocutory appeal: the order must "(1) conclusively determine[ ] the disputed question, (2) resolve[ ] an issue completely collateral to the cause of action, and (3) ... be effectively unreviewable on appeal from final judgment." United States v. Thompson, 814 F.2d 1472, 1475 (10th Cir.), cert. denied, 484 U.S. 830, 108 S.Ct. 101, 98 L.Ed.2d 61 (1987).
 
 
 17
 The first and second elements of the test clearly are met. The court's order fully determined the access question, and whether there were adequate grand jury votes to support the indictment is a matter completely collateral to the merits of the case.
 
 
 18
 The third element of the collateral order exception is also satisfied here, because technical challenges to the grand jury charging process such as those found here are not reviewable upon appeal after trial. In Midland Asphalt Corp. v. United States, 489 U.S. 794, 109 S.Ct. 1494, 103 L.Ed.2d 879 (1989), the Supreme Court ruled, under the Grand Jury Clause of the Fifth Amendment, that the lack of a grand jury indictment gives rise to a right not to be tried. Id. at 802, 109 S.Ct. at 1499. Of course, not every defect in a grand jury proceeding or indictment process will negate the validity of a grand jury indictment thereby implicating the constitutional right not to be tried. See id. (breach of grand jury secrecy requirement does not give rise to right not to be tried); Lawn v. United States, 355 U.S. 339, 350, 78 S.Ct. 311, 318, 2 L.Ed.2d 321 (1958) (alleged use of incompetent evidence before grand jury does not subject grand jury indictment to attack). "Only a defect so fundamental that it causes ... the indictment no longer to be an indictment, gives rise to the constitutional right not to be tried." Midland, 489 U.S. at 802, 109 S.Ct. at 1499. A grand jury vote total that is inadequate to support an indictment is such a fundamental defect; it causes the indictment no longer to be an indictment.
 
 
 19
 Because the court's order implicates defendants' right not to be tried, the order is unreviewable on appeal from a final judgment. Id. at 800-01, 109 S.Ct. at 498-99. The right not to be tried is violated if the defendants have been tried already, and no court can compensate for the violation of this right. Furthermore, claims attacking the technical validity of indictments become harmless error and therefore moot and unreviewable after final judgment. E.g., United States v. Mechanik, 475 U.S. 66, 73, 106 S.Ct. 938, 943, 89 L.Ed.2d 50 (1986) (simultaneous presence of two witnesses testifying in tandem before grand jury in violation of Fed.R.Crim.P. 6(d) is harmless error after petit jury's guilty verdict); United States v. Taylor, 798 F.2d 1337, 1340 (10th Cir.1986); United States v. Tobias, 836 F.2d 449, 452 (9th Cir.), cert. denied, 485 U.S. 991, 108 S.Ct. 1299, 99 L.Ed.2d 509 (1988). Accordingly, we hold that substantial claims attacking the technical validity of the grand jury charging process are subject to interlocutory appeal under the Cohen exception. Accord Tobias, 836 F.2d at 452; see also Mechanik, 475 U.S. at 81 n. 1, 106 S.Ct. at 947 n. 1 (Marshall, J., dissenting).
 
 
 20
 The government argues that although a motion to dismiss based upon the technical validity of a grand jury indictment might be reviewable under the Cohen exception, defendants attempt an appeal of a mere discovery motion, and that should not be allowed. We believe defendants' constitutional right not to be subject to trial without a grand jury indictment would be meaningless if defendants were unable to even attempt discovery of the relevant facts surrounding the grand jury indicting proceeding. Defendants deserve the opportunity to show that they are entitled to access to the information to prove such defects. Accord Tobias, 836 F.2d at 452 (a defendant may appropriately seek interlocutory review of a denied discovery motion which seeks to uncover defects in a grand jury's charging process).[4] Therefore, we hold that we have jurisdiction to consider the merits of defendants' appeal.
 
 B
 
 21
 In their cross-appeal defendants contend that the district court erred in denying their motion for access to the record of the number of grand jurors who voted to indict them. They are not satisfied by the district court's assurance, after an in camera inspection of the record, that a sufficient number of grand jurors voted to indict.
 
 
 22
 Fed.R.Crim.P. 6(c) provides that the record of the number of grand jurors voting to indict "shall not be made public except on order of the court."[5] The rule affirms that the well-established rule of grand jury secrecy, e.g., United States v. Procter & Gamble Co., 356 U.S. 677, 681, 78 S.Ct. 983, 985, 2 L.Ed.2d 1077 (1958), includes the voting record of the grand jurors. It seems apparent that in adopting Rule 6(c) Congress made the policy decision that the record revealing the number of grand jurors concurring to indict should remain secret absent a particularized, discrete showing of need. See United States v. Manley, 437 F.2d 1250, 1251 (10th Cir.) (minutes kept under Rule 6(c) may only be inspected after showing of materiality), cert. denied, 404 U.S. 837, 92 S.Ct. 124, 30 L.Ed.2d 69 (1971); United States v. Llaca Orbiz, 513 F.2d 816, 818-19 (1st Cir.) (disclosure of minutes under Rule 6(c) only upon showing of possible grounds to dismiss), cert. denied, 423 U.S. 861, 96 S.Ct. 117, 46 L.Ed.2d 88 (1975). The judge, therefore, necessarily exercises discretion in determining whether to order release of the voting record. Cf. Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 223, 99 S.Ct. 1667, 1675, 60 L.Ed.2d 156 (1979) (court's decision whether to release grand jury transcripts under Rule 6(e) "necessarily is infused with substantial discretion").
 
 
 23
 We will review the district court's denial of motion for access to the grand jury voting record under an abuse of discretion standard. See, e.g., In re Lynde, 922 F.2d 1448, 1451 (10th Cir.1991) (applying abuse of discretion standard to district court's denial of discovery of grand jury transcripts under Fed.R.Crim.P. 6(e)).
 
 
 24
 Defendants in their briefs argue two grounds for wanting to discover the number of grand jurors concurring to indict.[6] First, they contend that they have a right to know that the required twelve or more jurors voted to indict. See Fed.R.Crim.P. 6(f). Second, they make vague allegations to the effect that they have a right to know the exact number of those voting to indict to allow them to determine whether they should move to dismiss based upon lack of legal qualifications of individual jurors. At oral argument, counsel for defendants argued only the first ground.
 
 
 25
 Defendants rely principally upon United States v. Bullock, 448 F.2d 728 (5th Cir.1971), for the proposition that they are entitled to access to the voting record required by Rule 6(c). In Bullock, the defendant had filed a motion to dismiss arguing that the grand jury indictment was drafted by the United States Attorney and signed by the foreman of the grand jury but not concurred in by the required twelve or more grand jurors. The defendant also moved the court to allow him to inspect a transcript of the grand jury proceeding. The district court denied the defendant's motions. The Fifth Circuit, in a brief opinion, remanded with instructions that the defendant be allowed to inspect the voting record required by Rule 6(c). Id. at 729. Another court, relying exclusively upon Bullock, granted a motion ordering the government to provide the defendant with a copy of the grand jury voting record required by Rule 6(c). United States v. Benigno, Fed.Sec.L.Rep. (CCH) p 95,812, No. 76 Cr. 0603, 1976 WL 852, at * 7 (S.D.N.Y.1976); see also United States v. Quinn, 364 F.Supp. 432, 445 (N.D.Ga.1973); United States v. Bally Mfg. Corp., 345 F.Supp. 410, 421 (E.D.La.1972); 8 James W. Moore et al., Moore's Federal Practice p 6.02, at 6-47 (2d ed. 1991) ("The defendant is entitled to inspect this [the Rule 6(c) ] record for purposes of a motion to dismiss;" citing Bullock ).[7]
 
 
 26
 In United States v. Missler, 299 F.Supp. 1268 (D.Md.1969), aff'd, 427 F.2d 1369 (4th Cir.1970), cert. denied, 400 U.S. 997, 91 S.Ct. 474, 27 L.Ed.2d 447 (1971), however, a district court noted that when there is a dispute regarding the number of grand jurors voting to indict, the proper procedure is for the court, after an in camera review of the record, to "advise the defendant only that 12 or more jurors concurred in finding the indictment," and not to reveal the exact number concurring, "in order to preserve the secrecy provided by Rule 6." Id. at 1270 n. 3. In a related context, another court has approved the practice of having the court conduct an in camera inspection of the grand jury minutes kept pursuant to Rule 6(c) to avoid any possible prejudice to defendants. United States v. Ostrer, 481 F.Supp. 407, 417 (S.D.N.Y.1979).
 
 
 27
 Bullock itself is distinguishable from the case before us on its facts, in that the defendant there had filed a motion to dismiss the indictment, and the trial court apparently did nothing to address the defendant's contention that fewer than twelve grand jurors concurred in the indictment. Bullock, 448 F.2d at 728. Further, it is uncertain whether the defendants in Bullock ever were given direct access to the record of the vote. See United States v. Bullock, 451 F.2d 884, 888-89 (5th Cir.1971) ("We previously entered a conditional order ... requiring ... the record before us be supplemented with a copy of the document indicating that the requisite number of jurors had concurred in the finding. We now have that document before us, and it discloses that Rule 6 was adhered to in all respects."). In the instant case, there was no specific motion to dismiss, and the trial court did make an in camera inspection of the grand jury vote, determining that the Rule 6(f) requirement of concurrence by twelve or more grand jurors had been satisfied. Defendants make no argument that the district judge would misrepresent the grand jury's vote.
 
 
 28
 If Bullock and the other authorities citing that opinion stand for the proposition that defendants are always entitled to view the report of the foreman of the grand jury specifying the number of votes for the indictment, we respectfully disagree. We do believe defendants are entitled to the assurance of the district judge that the judge has inspected the report and it contains twelve or more votes to indict. But anything more, except upon a showing of particularized need, would negate Rule 6(c)'s requirement of secrecy absent an "order of the court."
 
 
 29
 There are also other reasons for upholding Congress' determination that the Rule 6(c) voting record generally should not be made public. One reason motivating the grand jury secrecy rule is the need to protect grand jurors from intimidation or retaliation. See In re Grand Jury Investigation, 903 F.2d 180, 182 (3d Cir.1990). If, for example, a unanimous grand jury vote is revealed, defendants and the public know that all grand jurors concurred in the decision to indict. In such a case if any juror's identity is known, that juror's vote is also known. An unpopular indictment might lead to public ridicule or private retaliation against the grand jury member.
 
 
 30
 Defendants' other justification for wanting to see the grand jury vote total--to allow them to determine whether they should move to dismiss based upon lack of legal qualifications of individual jurors--appears to be totally speculative and no more than a pretext. Review of the Rule 6(c) voting record will not lead to evidence that particular jurors were not legally qualified to sit on the grand jury. The Rule 6(c) voting record filed with the clerk of the court in this case is simply a standard form supplied by the Administrative Office (DC 53) identifying the court, the date, the location of the grand jury, the number of grand jurors concurring to indict, and the signature of the grand jury foreperson. Such a record without more cannot justify a motion to dismiss based upon legal qualifications of the grand jurors.
 
 
 31
 Accordingly, the district court did not abuse its discretion in denying defendants access to the grand jury voting record.
 
 
 32
 In summary, the district court's order dismissing Count 10 of the indictment is AFFIRMED. The government's motion to supplement the record on appeal is GRANTED; its motion to dismiss the cross-appeals is DENIED. The trial court's denial of defendants' motion for access to the grand jury's voting record is AFFIRMED.
 
 
 
 [1]
 18 U.S.C. § 1001 provides:
 "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."
 
 
 [2]
 That letter states,
 "Your company has been served with a subpoena calling for the production of documents before a federal grand jury in Kansas City, Missouri. This is to advise you that in lieu of personally producing the documents before the grand jury, the Company may, at its option, comply with the subpoena by sending the documents to me at the Antitrust Division's offices in Washington, D.C., by registered mail or prepaid express."
 Letter of Aug. 18, 1988, Motion to Supplement Record on Appeal, filed June 3, 1991, App. A. We grant the government's motion to supplement the record, because we find the documents it seeks to include in the record important to an understanding of the issues before us.
 
 
 [3]
 The prosecutor's unique role as an assistant to the grand jury and the fact that the affidavit and discovery were in response to the grand jury's subpoena distinguishes this case from cases like United States v. Barber, 881 F.2d 345 (7th Cir.1989), cert. denied, 495 U.S. 922, 110 S.Ct. 1956, 109 L.Ed.2d 318 (1990), and United States v. Gonzalez-Mares, 752 F.2d 1485 (9th Cir.), cert. denied, 473 U.S. 913, 105 S.Ct. 3540, 87 L.Ed.2d 663 (1985), upon which the government relies. Additionally, Barber distinguished false statements made by a person affecting his own legal proceeding and those sought to influence another's legal proceeding. 881 F.2d at 350. In Gonzalez-Mares, the false statements were made post-trial in a context which affected the probation officer's sentence recommendation. See 752 F.2d at 1488. Both of those panels of judges, however, appear to take a broader view of the application of 18 U.S.C. § 1001 than most other judges who have considered analogous cases. Compare Gonzalez-Mares with United States v. Mayer, 775 F.2d 1387, 1391 (9th Cir.1985), in the same circuit, and Masterpol, 940 F.2d at 766. See also Barber, 881 F.2d at 350 (criticizing the judicial function exception in dicta)
 
 
 [4]
 Tobias cites United States v. Benjamin, 812 F.2d 548 (9th Cir.1987), vacated, 490 U.S. 1043, 109 S.Ct. 1948, 104 L.Ed.2d 418 (1989), in support of the appropriateness of interlocutory review. The Supreme Court in Midland, 489 U.S. at 799, 109 S.Ct. at 1498, invalidated Benjamin, and the Ninth Circuit has recognized that Benjamin is no longer good law. See, e.g., United States v. Taylor, 881 F.2d 840, 842 (9th Cir.1989). Tobias, however, does not rely exclusively upon Benjamin, and the facts and rule in Tobias are not discredited by Midland. Benjamin, like Midland, involved a motion to dismiss for violation of Rule 6(e) grand jury secrecy requirements. Midland held that the denial of such a motion is reviewable on appeal from final judgment and not before final judgment. Midland, 489 U.S. at 800, 109 S.Ct. at 1498. Tobias involved the issues whether the grand jury was lawfully constituted and whether a sufficient number of grand jurors voted to indict--issues Midland suggests are unreviewable after final judgment
 
 
 [5]
 Rule 6(c) provides in relevant part: "The foreperson or another juror designated by the foreperson shall keep record of the number of jurors concurring in the finding of every indictment and shall file the record with the clerk of the court, but the record shall not be made public except on order of the court."
 
 
 [6]
 In the district court defendants argued a third ground for disclosure of grand jury voting records. They asserted that the grand jury is required to vote on each count and each defendant named in an indictment separately. This argument was not argued on appeal and is waived
 
 
 [7]
 United States v. Marshall, 526 F.2d 1349 (9th Cir.1975), cert. denied, 426 U.S. 923, 96 S.Ct. 2631, 49 L.Ed.2d 376 (1976), discussed Bullock, but we do not read that Ninth Circuit opinion as endorsing the right of a defendant to a personal view of the voting record of the grand jury. In Marshall, the court said that the defendant had made no specific allegations of misconduct and the government had "voluntarily" offered inspection. The court then said, "No more was required." Id. at 1360