**UNITED STATES of America,
Appellee,**

v.

**Zare TIRINKIAN, Appellant.**

**Nos. 517, 518, Dockets 73–2220, 73–2318.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 21, 1973.

Decided Dec. 7, 1973.

Paul B. Bergman, Asst. U. S. Atty. (Robert A. Morse, U. S. Atty., Eastern District of New York, and L. Kevin Sheridan, Asst. U. S. Atty., on the brief), for appellee.

Robert M. Mardirosian, Watertown, Mass., for appellant.

Before LUMBARD, MANSFIELD and MULLIGAN, Circuit Judges.

PER CURIAM:

Zare Tirinkian appeals from judgments of conviction in the Eastern District on July 16, 1973, for importing approximately 286 pounds of hashish (21 U.S.C. §§ 846, 952(a) and 960(a)(1)) and conspiracy to defraud the United States by agreement to use false shipping documents (18 U.S.C. §§ 371, 1001) and a sentence of two and one-half years, following a jury trial. We affirm.

The only question requiring discussion concerns the admission of testimony that on June 20, 1972 as Zare's brother, Alexan Tirinkian, and Antranik Malajalian, were about to fly from Boston to Beirut, Lebanon on one-way tickets purchased that same day, Malajalian had with him a small suitcase which contained one or two pairs of pants, a shirt and about $146,000 in United States currency.

As other evidence showed that Malajalian was acting with three Tirinkian brothers in such a way that the jury could find that he was aiding and abetting them in the illegal importation of goods from Beirut, Lebanon to Brooklyn, some of which contained hashish, it was not error to receive testimony regarding Malajalian's possession of $146,000 in cash.

The evidence involved three shipments supposedly of household goods, all from Beirut. The first consigned to Abraham

Bardakjian arrived in June 1972. Bardakjian had come to the United States on April 4 on an airline ticket given to him by Zare. Zare found lodging for Bardakjian in Watertown, Massachusetts which he shared with Malajalian who was an acquaintance of Zare. Zare informed Bardakjian around June 14, in a conversation overheard by Malajalian, that a shipment consigned to him had arrived and that he, Bardakjian, should pick it up. Bardakjian then went to Brooklyn on June 14th with Alexan Tirinkian, Zare's brother, picked up two wooden crates, and at Alexan's suggestion, gave some money to Customs Inspector Gannotta.[1] Alexan then took the crates away and five hours later he took Bardakjian back to Boston.

The second shipment was consigned to Varougan Garabedian, who like Bardakjian was married to one of Zare's wife's sisters. Despite Garabedian's protests, Zare told him at the end of May 1972 that household goods were coming to him and as an immigrant he could bring them in without paying a tax. On June 16, 1972, at Zare's urging, Garabedian's wife went to New York with Zare and Alexan to pick up the shipment. Zare gave Inspector Gannotta some money and the crates were inspected and released. Alexan secured a truck which Zare then loaded and Alexan drove away. Zare and Mrs. Garabedian returned to Boston.

It was the seizure of the third shipment on June 20, 1972 which coincided with the purchase of one-way air tickets for the flight of Alexan and Malajalian to Beirut that same day. On the morning of June 20, Jery Tirinkian, also a brother of Zare, and Krikor Vartanessian went to Pier 5 in Brooklyn to pick up a shipment of two crates of household goods consigned to Vartanessian. Two different inspectors inspected the crates and when the crates were opened they found approximately 286 pounds of hashish valued at between $169,000 and $286,000. Meanwhile Jery absconded, leaving Vartanessian to explain. Zare had told Vartanessian in March that he was sending a package to him. After Vartanessian received mail notice of the arrival of the shipment, Zare had persuaded him to go to New York with Jery on June 20.

This summary of the evidence demonstrates the relevance of the testimony regarding Malajalian's possession of $146,000 in cash, as well as the overwhelming proof of the appellant's guilt. It is immaterial that Malajalian was not indicted and was not named as a co-conspirator. His relationship to the Tirinkians and to others involved in the importation of the shipments was such that it provided an adequate basis for the jury to consider that his action in attempting to take with him to Beirut the small bag and its contents of $146,000 was done on behalf of the appellant, Zare, and his brother Alexan, with whom he was then traveling. Cf. United States v. Fisher, 455 F.2d 1101, 1103–1104 (2 Cir. 1972). Moreover, the sudden flight to Beirut was arranged on June 20th, the same day the third shipment was seized at Pier 5 in Brooklyn.[2]

There is no merit to the appellant's claim that the indictment should have been dismissed because he was not tried within six months of his arrest on June 22, 1972. The government was ready as required by the Second Circuit Rules

---

1. The same indictment charging the appellant with conspiracy to defraud the United States charged Gannotta in four counts with receiving an unlawful gratuity and with bribery. Appellant and Gannotta were tried together; the jury acquitted Gannotta.

2. Coincidentally, Malajalian was detained at the airport prior to his flight because he fit the profile of a potential skyjacker. After being questioned by Special Agent Siegel of the Bureau of Customs, he was permitted to leave the airport with Alexan, who had served as his interpreter, but without the $146,000 in cash which was confiscated. At the time of the questioning, Special Agent Siegel was not aware of any involvement which either Alexan or Malajalian might have had with matters charged in the indictment. In any event they were not apprehended and both were apparently in Beirut at the time of trial.

Regarding Prompt Disposition of Criminal Cases. There was unavoidable delay due to the condition of Judge Rosling's calendar and the judge's death on April 16, 1973, before trial was finally commenced on June 26, 1973 before Judge Judd to whom the case had been reassigned.

Affirmed.