## UNITED STATES of America, Appellee,

v.

## Dennis D'AMATO, Appellant.

## No. 184, Docket 74-2008.

United States Court of Appeals, Second Circuit.

Argued Sept. 24, 1974.

Decided Dec. 5, 1974.

Gerald Shargel, LaRossa, Shargel & Fischetti, New York City, for appellant.

Howard Wilson, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., for the S. D. N. Y., John D. Gordan III, Asst. U. S. Atty., of counsel), for appellee.

Before LUMBARD, FEINBERG and OAKES, Circuit Judges.

OAKES, Circuit Judge:

■ On occasion a prosecution is completed under a statute that everyone, including defense counsel and trial court, assumes to be applicable. On closer examination on appeal, however, the panel raises a question that no one had considered, here the applicability of the statute, 18 U.S.C. § 1001, to statements filed in private civil litigation. After post-argument briefing, we have deter-

---

mined that the statute is not applicable to such statements. We therefore reverse the appellant's conviction.[1]

Appellant was convicted after a jury trial for having made false statements in an affidavit filed in a civil action in the United States District Court for the Eastern District of New York. The civil action, in which appellant was a codefendant, was one brought in July of 1972 by Johnson Products, Inc. (Johnson), the manufacturer of the cosmetic hair preparation "Ultra Sheen," for damages and an injunction arising out of the sale by appellant of over 18,000 jars of a counterfeit product under the Ultra Sheen label. Appellant filed an affidavit in the civil suit dated August 8, 1972, denying knowledge of the fraudulent or counterfeit nature of the product which he sold. The prosecution here, under the so-called "false statement" statute,[2] charged that the affidavit was false.

■ We start with the proposition that in no case has it ever been held that 18 U.S.C. § 1001 is applicable to a false statement made in a *private* civil action. While this would not necessarily control the question of statutory construction, it '

does partake of an administrative, here a prosecutorial, interpretation that the statute, in existence in essentially its present form since 1934[3] and used in cases the annotations for which cover 72 pages in the Annotated Code, does not apply to false statements made in a private civil action, at least where the Government is not a party.

The Government argues that, since the false affidavit was filed in a judicial proceeding, the statute bites, because even though civil in nature the proceeding was a "matter" and one "within the jurisdiction" of the judicial "department." Because 18 U.S.C. § 6 defines "department" to include the "judicial branch" of government, United States v. Bramblett, 348 U.S. 503, 75 S.Ct. 504, 99 L.Ed. 594 (1955),[4] this argument is not easily answered by reference solely to the language of § 1001. Beyond the wording of the statute, a review of the case law and the legislative history, which we make below, tends to indicate that the keys for applicability may be whether the false statement in question involved a fraud upon the Government or was made to an investigative or regulatory agency of the Government in connection with some matter legitimately within the agency's

---

1. At trial, both D'Amato and a codefendant, Robert Donovan, were charged with two counts of mail fraud. 18 U.S.C. § 1341. D'Amato alone was charged with having made a false statement in violation of 18 U.S.C. § 1001. Donovan's conviction on the two mail fraud counts was affirmed in open court. D'Amato was found not guilty of mail fraud, but he was convicted of having made a false statement. His sentence was an 18-month term of probation on which sentence was stayed.

2. 18 U.S.C. § 1001:
    Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

3. The statute derives from an Act of March 2, 1863, 12 Stat. 696, but attained its present form in 1934. 48 Stat. 996. *See* United States v. Bramblett, 348 U.S. 503, 504, 75 S.Ct. 504, 99 L.Ed. 594 (1955); United States v. Gilliland, 312 U.S. 86, 93–95, 61 S.Ct. 518, 85 L.Ed. 598 (1941).

4. 18 U.S.C. § 6 provides:
    As used in this title:
    The term "department" means one of the executive departments enumerated in section 1 of Title 5, unless the context shows that such term was intended to describe the executive, legislative, or judicial branches of the government.
    The term "agency" includes any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more limited sense.
    United States v. Bramblett, *supra*, rejected the claim that § 1001 applied only to the executive branch.

jurisdiction.[5] In the present case, the facts disclose neither a fraud upon the Government nor a deception upon an investigative or regulatory agency.

Here the Government was not a party to the suit in which the alleged false statement was made, nor was the statement one which was intended to further a scheme to defraud the Government. The Government argues, however, that § 1001 was intended to have a wider sweep, in the sense that a fraudulent statement in a court is ergo a "fraud upon the Government." To be sure, there is broad language in at least one of our previous cases which suggests this conclusion. In United States v. Adler, 380 F.2d 917, 922 (2d Cir.), cert. denied, 389 U.S. 1006, 88 S.Ct. 561, 19 L.Ed.2d 602 (1967) (false statement to FBI),[6] it was said, drawing on the language of United States v. Gilliland, 312 U.S. 86, 61 S.Ct. 518, 85 L.Ed.2d 598 (1941), that "§ 1001 was broadly drawn to protect the 'authorized functions' of federal agencies from 'perversion' . . . ." From this it is argued that the judicial function, surely "authorized," will be "perverted" by failure to punish submission of false facts to the decision-making process in a private civil proceeding. But the Adler court was speaking to a particular case involving the argument that § 1001 did not apply to every criminal investigation. Adler is only one in a long line of decisions upholding prosecutions under § 1001 [7] where false statements have tended to "impair the basic functions entrusted by law to [the] agency." United States v. Bedore, 455 F.2d 1109, 1111 (9th Cir. 1972).

United States v. Kahan, 479 F.2d 290 (2d Cir. 1973), rev'd, 415 U.S. 239, 94 S.Ct. 1179, 39 L.Ed.2d 297 (1974), is also relied upon. In Kahan, the defendant had made statements in open court, not under oath, about his assets in connection with securing court-appointed counsel. The actual holding of this court was that these false statements could not be proven as false exculpatory statements in the course of a trial on bribery charges, a decision which was reversed by the Supreme Court. In a footnote, 479 F.2d at 292, n. 3, the Kahan panel did say: "If there has been willful misrepresentation by defendant of his assets, proper remedy lies in prosecution for perjury or false statement . . ." Accepting the footnote statement as sound law, such a false statement again operated to defraud the Government, which has to pay assigned counsel. D'Amato's fraud was not on the Government, but on Johnson, the manufacturer of Ultra Sheen.

Our less expansive view of the scope of § 1001, that it does not apply where the Government is involved only by way of a court deciding a matter in which the Government or its agencies are not involved, receives some support from some of the cases in other circuits, though we do not necessarily have to agree with them to sustain our holding here. In Morgan v. United States, 114 U.S.App.D.C. 13, 309 F.2d 234 (1962), cert. denied, 373 U.S. 917, 83 S.Ct. 1306, 10 L.Ed.2d 416 (1963), it was held that an attorney who falsely represented himself as having been admitted to practice before the District of Columbia courts

---

**5.** United States v. Bramblett, 348 U.S. at 504, 75 S.Ct. 504; United States v. Gilliland, 312 U.S. at 93–95, 61 S.Ct. 518; United States v. Isaacs, 493 F.2d 1124, 1156–1158 (7th Cir. 1974); United States v. Bedore, 455 F.2d 1109, 1111 (9th Cir. 1972); United States v. Simon, 425 F.2d 796 (2 Cir. 1969), cert. denied, 397 U.S. 1006, 90 S.Ct. 1235, 25 L.Ed.2d 420 (1970).

**6.** But see Friedman v. United States, 374 F.2d 363 (8th Cir. 1967) (false complaint to the FBI not covered by 18 U.S.C. § 1001). The Friedman case, however, can be seen as holding

only that the unsworn written statement there was not within the jurisdiction of a governmental agency. See also United States v. Levin, 133 F.Supp. 88 (D.Colo.1953).

**7.** E. g., United States v. Zeehandelaar, 498 F.2d 352 (2d Cir. 1974); United States v. Cohen, 489 F.2d 945 (2d Cir. 1973); United States v. Tirinkian, 488 F.2d 873 (2d Cir. 1973); United States v. Candella, 487 F.2d 1223 (2d Cir. 1973), cert. denied, 416 U.S. 977, 94 S.Ct. 1563, 39 L.Ed.2d 872 (1974); United States v. Adcock, 447 F.2d 1337 (2d Cir.), cert. denied, 404 U.S. 939, 92 S.Ct. 278, 30 L.Ed.2d 252 (1971).

could be prosecuted under 18 U.S.C. § 1001. Although *Morgan* involved a situation where the statute in question was found to be applicable, the language of the District of Columbia court made it clear that 18 U.S.C. § 1001 applied to a limited number of statements made before a court.

The *Morgan* court was careful to say that the case went no further than to uphold a prosecution for a false statement made before a court in the exercise of its "administrative" or "housekeeping" functions, the court distinguishing the case then before it from one which, as here, would involve a false statement within the "judicial machinery" of the court. *Id.* at 237. United States v. Erhardt, 381 F.2d 173 (6th Cir. 1967), while relying on *Morgan,* went even beyond that case in reversing a § 1001 conviction where the appellant had produced a forged receipt and testified falsely in a criminal proceeding against him.[8] Our case is stronger than *Erhardt,* for in a criminal case where the Government is a party, it could at least be argued that the Government is defrauded by the false statement proffered; ours, however, relates to a *civil* case in which the Government is in no way involved. The Government's distinction of *Erhardt* as involving only a false document submitted in conjunction with sworn testimony, while here there was no sworn testimony, is too tenuous to warrant reply.

■ The Government argues finally that "the best support for not carving out such a limitation on § 1001 is by reference to the perjury statutes *which seek to prohibit the same type of conduct* at which § 1001 is aimed." (Emphasis added.) And it points to the fact that to the extent a differentiation between § 1001 and the perjury statute, 18

U.S.C. § 1621, may have rested on the two-witness rule incorporated in the latter, that distinction has been obliterated by new 18 U.S.C. § 1623, permitting prosecution on the basis of one witness's testimony for false declarations in court proceedings or before grand juries. *See* United States v. Kahn, 472 F.2d 272 (2d Cir.), cert. denied, 411 U.S. 982, 93 S.Ct. 2270, 36 L.Ed.2d 958 (1973). It may be, as the Government suggests, that § 1001 and the perjury statutes may both overlap so that the same false statement may be prosecuted under both, United States v. Greenberg, 268 F.2d 120, 122 (2d Cir. 1959), while at the same time each covers different conduct in that a perjury conviction requires proof of oath while a false statement conviction does not. *Id.* It may be that an *unsworn* false statement submitted in a private civil action cannot be prosecuted either as perjurious or as a false statement, but we do not see the horrific consequences of such a "gap" or of the suggested "absurd anomaly" that a prosecution will lie for false statements submitted to thousands of executive agencies, but not for one submitted to a federal court in a private civil action. Generally, in any event, as here, the allegedly false statement will be sworn to[9] and subject to prosecution for perjury, as of course it may be though made in a civil proceeding. Hale v. United States, 406 F.2d 476 (10th Cir.), cert. denied, 395 U.S. 977, 89 S.Ct. 2129, 23 L.Ed.2d 765 (1969); United States v. Lester, 248 F.2d 329 (2d Cir. 1957).

Such a "gap" or "anomaly" is not to be wondered at in the light of the legislative history of § 1001. That section, as United States v. Bramblett, *supra,* made clear, "had its origin . . . in the wake of a spate of frauds upon the Government" in Civil War times. 348

---

**8.** *See also* United States v. Allen, 193 F.Supp. 954 (S.D.Cal.1961), reversing a conviction under § 1001 for a false statement made to a grand jury. *But see* United States v. Stephens, 315 F.Supp. 1008 (W.D.Okl.1970), upholding a conviction under § 1001 for a false statement made in a civil proceeding to vacate a criminal sentence.

**9.** The affidavit as printed in the appendix (A-15) refers only to "Notary Stamp," but as actually filed on August 9, 1972, was notarized by Sylvia D. Garland, a Nassau County notary.

U.S. at 504, 75 S.Ct. at 506. It was originally a statute penalizing the presenting "for payment or approval" of false claims "upon or against the Government . . . or any department or office . . . ." 348 U.S. at 504–505, 75 S.Ct. at 506. False statements were proscribed only if they were made "for the purpose of obtaining, or aiding in obtaining, the approval or payment of such claim . . . ." *Id.* While the statute was extended in immaterial respects in various codifications, it was not until 1918, 40 Stat. 1015, that false statements were proscribed if made "for the purpose and with the intent of cheating and swindling or defrauding the Government of the United States" as well as if made for the purpose of obtaining payment of a false claim. 348 U.S. at 506 n. 2, 75 S.Ct. at 506. In the Act of June 18, 1934, 48 Stat. 996, at the urging of the Secretary of Interior, in connection with "hot oil" transportation, the words "cheating" and "swindling" were eliminated and the statute was no longer restricted to cases involving pecuniary or property loss to the Government. It was this amendment which the Supreme Court said in United States v. Gilliland, *supra,* indicated the congressional intent "to protect the authorized functions of governmental departments and agencies from the perversion which might result from the deceptive practices described." 312 U.S. at 93, 61 S.Ct. at 522. But the Act of 1934 was still thought of, by the Court at least, "as a fitting complement" to those statutes "under which, *in connection with the authorized action of governmental departments or agencies, the presentation of affidavits, documents, etc., is required."* *Id.* at 95–96, 61 S.Ct. at 523 (emphasis added). It was in the 1948 revision, Act of June 25, 1948, 62 Stat. 749, that the false claims and false statements sections were divided and assumed their present basic form as 18 U.S.C. § 287 and § 1001 respectively. The legislative history seems to confirm the fact that this statute, originally intended to protect the Government from those who would defraud it for monetary gain, was broadened to maintain the integrity of the administrative agencies whose historical development coincides with the 1934 amendments to this statute.

We see, in short, nothing in the case law or the legislative history which would support a prosecution under § 1001 for a false statement made in a *private civil action* even though it is made in the United States courts. Accordingly, we reverse the judgment without treating the only difficult or interesting point made by appellant, whether venue is proper in the Southern District of New York in a case where the affidavit was signed and filed in the Eastern District.

Judgment reversed.