**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**John Bruce HUBBARD, Defendant–
Appellant.**

**No. 91–1775.**

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 19, 1993.

Decided Feb. 15, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied March 30, 1994.

Gary Felder, Jennifer J. Peregord (argued and briefed), Office of the U.S. Atty., Detroit, MI, for plaintiff-appellee.

Paul Morris (argued and briefed), Coral Gables, FL, for defendant-appellant.

Before: NELSON and BATCHELDER, Circuit Judges; and MATIA, District Judge.*

BATCHELDER, Circuit Judge.

Defendant Hubbard was charged in a ten-count indictment with four counts of bankruptcy fraud in violation of 18 U.S.C. § 152, with three counts of making false statements in a matter within the jurisdiction of the federal government in violation of 18 U.S.C. § 1001, and with three counts of mail fraud in violation of 18 U.S.C. § 1341. A jury found him guilty on all counts. He appeals, arguing (1) the evidence was insufficient to convict him of any and all counts and (2) his trial counsel's performance violated his Sixth Amendment right to the effective assistance of counsel.

## I

The counts of conviction revolve around Hubbard's dealings in two different matters: his bankruptcy proceedings and his ownership of a Fino boat.

On September 25, 1985, Hubbard filed a petition for Chapter 7 bankruptcy. Pursuant to the bankruptcy petition and in the course of certain adversary proceedings, Hubbard was deposed on at least four occasions regarding his assets, his transfer of those assets, their value, and their whereabouts. At each of these depositions, Hubbard was put under oath and he swore to tell the truth. The government prosecuted Hubbard for false statements he made during these depositions.

Also during the bankruptcy proceedings, the bankruptcy trustee filed a motion for surrender of the books and records of Hubbard's businesses. Hubbard filed a written response to this motion. The bankruptcy trustee also filed an amended complaint, to which Hubbard responded with a formal pleading, "Debtor's Answer to Trustee's First Amended Complaint." The government prosecuted Hubbard for written statements he made in his response to the motion and in his Answer.[1]

## II

### A. Sufficiency of the Evidence

■ We review the sufficiency of the evidence for a criminal conviction under the standard set out in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979): "[W]hether, after viewing the evidence in the light most favorable to the

---

* The Honorable Paul R. Matia, United States District Judge for the Northern District of Ohio, sitting by designation.

1. We defer discussion of the Fino boat to the analysis of the mail fraud counts (the related counts of conviction).

prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

### 1. Bankruptcy Fraud Counts (Counts I–IV)

The indictment charged in each of the first four counts that many of Hubbard's answers during his deposition were false: count I alleged that Hubbard gave false answers in response to eleven specified deposition questions on October 23, 1985, count II alleged that Hubbard gave false answers in response to three specified deposition questions on November 13, 1985, count III alleged that Hubbard gave false answers in response to eleven specified deposition questions on February 7, 1986, and count IV alleged that Hubbard gave false answers in response to eighteen specified deposition questions on June 17, 1986. Hubbard asserts that the answers he gave during his depositions were not materially false. Because this is a sufficiency of the evidence claim, if we find that any one of Hubbard's allegedly false statements was a violation of 18 U.S.C. § 152, that count of conviction must be upheld.

We have carefully reviewed the questions asked and the statements given and have concluded that it would serve no useful purpose to go into detail on each and every count of conviction. The evidence was plainly sufficient to support the jury's conclusions, and we therefore affirm the first four counts of conviction.

### 2. False Statement Counts (Counts V–VII)

Counts V, VI, and VII charged Hubbard with violating 18 U.S.C. § 1001 for (1) stating in response to the bankruptcy trustee's motion to compel Hubbard to surrender his books and records that he had produced such records previously to the previous bankruptcy trustee (which he had not), (2) answering the bankruptcy trustee's complaint by denying that a certain well-drilling machine was stored a particular place when in fact Hubbard knew that it was, and (3) falsely denying the bankruptcy trustee's further allegation that parts to the well-drilling machine were being stored at a different specified location. None of these alleged falsehoods was made under oath.

 Hubbard contends that his conviction on these counts cannot stand for several reasons. First, his untruthful statements were trivial falsehoods and were thus not material as required by § 1001.[2] Second, his statements fall within the "exculpatory 'no'" exception to liability under § 1001. Third, the statements fall within the "judicial function" exception to § 1001 liability. Finally, the plain language of the statute does not encompass this activity.[3]

 As a preliminary matter, we must address an argument that the government raised at oral argument: because Hubbard failed to raise the judicial function exception defense before trial, Federal Rule of Criminal Procedure 12(f) bars him from raising it now. We disagree with the government's suggestion. Rule 12(b) identifies five types of defensive moves (motions, requests, or defenses) that must be made prior to trial, and Rule 12(f) provides that the failure to raise one of these types of claims before trial waives that claim. Hubbard's argument is

---

**2.** Hubbard also argues that his statements were not shown to have the capability of influencing the functions of a government agency, but this is part and parcel of the materiality inquiry, *see United States v. Steele,* 933 F.2d 1313, 1319 (6th Cir.) (en banc), *cert. denied,* — U.S. —, 112 S.Ct. 303, 116 L.Ed.2d 246 (1991), so we do not address this argument independently.

**3.** Hubbard's brief can also be read to suggest two additional arguments: (1) that his responses were simply "traditional trial tactics" and thus cannot violate § 1001, and (2) that evidence was taken from his attorney in violation of the attorney-client privilege.

Both of these arguments fail. First, whether or not it is a "traditional trial tactic" to answer a complaint with affirmative falsehoods, we need not sanction such action and therefore will not create an exception so broad as to include Hubbard's conduct. *Cf.* discussion *infra* note 5. Second, the information elicited from Hubbard's attorney was not protected by the attorney-client privilege because what Hubbard communicated to his attorney was to be conveyed to the bankruptcy trustee and the court via written pleading and thus was not protected by the privilege: the privilege extends only to *confidential* communications, not *all* communications.

most closely described by Rule 12(b)(2), which requires that the defendant raise before trial "[d]efenses and objections based on defects in the indictment or information (other than that it fails to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court at any time during the pendency of the proceedings)."

Hubbard's argument is not merely a formalistic objection to a defect in the indictment; instead, his argument goes to the heart of whether, as a matter of law, he can be convicted of the crime with which he was charged. Thus, his claim falls within Rule 12(b)(2)'s parenthetical, which excepts his argument from the waiver provisions of Rule 12. *Cf. Davis v. United States,* 411 U.S. 233, 241, 93 S.Ct. 1577, 1582, 36 L.Ed.2d 216 (1973) ("The waiver provisions of Rule 12(b)(2) are operative only with respect to claims of defects in the institution of criminal proceedings."). We therefore proceed to the merits of Hubbard's contentions.

 Hubbard's first two arguments can be disposed of quickly. First, his misrepresentations were clearly material under the standard set out in *United States v. Steele,* 933 F.2d 1313, 1319 (6th Cir.) (en banc), *cert. denied,* —— U.S. ——, 112 S.Ct. 303, 116 L.Ed.2d 246 (1991), because they had the capability of influencing the bankruptcy court's function in determining what assets the debtor had and where those assets were so that they could be made available for the repayment of creditors. Second, the "exculpatory 'no' " doctrine cannot be applied here

because this Circuit has rejected that doctrine. *See Steele,* 933 F.2d at 1319–22.

 Hubbard's third and fourth arguments are similar to one another and challenge his false statement convictions as unlawful as a matter of law even assuming his statements were materially false. This assignment of error poses a more difficult problem.

Section 1001 provides:

Whoever, *in any matter within the jurisdiction of any department or agency of the United States* knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1001 (emphasis added). The question is whether statements made in written filings in the bankruptcy court (and intended for use by the court and the bankruptcy trustee) are statements made "in [a] matter within the jurisdiction of any department or agency of the United States." [4]

In *United States v. Bramblett,* 348 U.S. 503, 75 S.Ct. 504, 99 L.Ed. 594 (1955), a case involving a false representation by a then Congressman to the House of Representatives' Disbursing Office that a named woman was entitled to compensation as his official clerk, the Court rejected the argument that

---

**4.** At first glance, one might be tempted to believe that the plain language of the statute prohibits application of § 1001 to the case at bar. In terms of ordinary usage, "department" and "agency" connote the divisions of the executive branch, e.g., the Treasury Department, the Department of Justice, the Environmental Protection Agency, etc., and not the whole or any divisions of the judicial or legislative branches— Congress is not the Department of Lawmaking, nor is the U.S. Court of Appeals the Appellate Adjudication Agency. And, the statutory definitions section of Title 18 seems to support this common sense view.

As used in this title:
The term "department" means one of the executive departments enumerated in section 1 of Title 5, unless the context shows that such

term was intended to describe the executive, legislative, or judicial branches of the government.
The term "agency" includes any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more limited sense.
18 U.S.C. § 6. Enacted in 1948 and unchanged since, § 6 sets up a presumption that the judicial branch is not a department or agency unless the context shows otherwise.

The Supreme Court, however, has instructed us that the "any department or agency" language of § 1001 is not to be restricted by § 6. *See* discussion *infra.*

§ 1001 violations were limited to false statements made to the executive branch.

The falsification here involved was held to be within the jurisdiction of the Disbursing Office of the House which it was thought could not meet the definitions in § 6 [*see* note 4 *supra* ]. It seemed significant to the trial court "that Title 18, § 287 (formerly the first part of old Section 35) provides penalties against any one who 'makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim ... knowing such claim to be false,' " whereas § 1001 does not contain such language. [*United States v. Bramblett*, 120 F.Supp. 857, 861 (D.D.C.1954) ].

It might be argued that the matter here involved was within the jurisdiction of the Treasury Department, as the appellee's misstatements would require the payment of funds from the United States Treasury. Or, viewing this as a matter within the jurisdiction of the Disbursing Office, it might be argued, as the Government does, that that body is an "authority" within the § 6 definition of "agency." We do not rest our decision on either of those interpretations. The context in which this language is used calls for an unrestricted interpretation. This is enforced by its legislative history. It would do violence to the purpose of Congress to limit the section to falsifications made to the executive departments. Congress could not have intended to leave frauds such as this without penalty. The development, scope and purpose of the section shows that "department," as used in this context, was meant to describe the executive, legislative and judicial branches of the Government. The difference between the language of § 287 and that of § 1001 can only be understood in the light of legislative history. That history dispels the possibility of attaching any significance to the difference.

*Id.,* 348 U.S. at 509, 75 S.Ct. at 508. This language from *Bramblett* makes it necessary to reject Hubbard's plain language argument because the Supreme Court has said that § 1001 includes false statements to the judicial branch.

■ Even though *Bramblett* does not admit of any exceptions to its sweeping language, the lower courts have carved out more than one. The most important of these for the case at bar is one suggested in this court's decision in *United States v. Erhardt,* 381 F.2d 173 (6th Cir.1967) (per curiam). In *Erhardt,* it was held that Erhardt did not violate § 1001 when he submitted a false writing and testified falsely at an earlier criminal proceeding against him: "We hold that appellant's conviction under § 1001 must be reversed ... because § 1001 does not apply to the introduction of false documents as evidence in a criminal proceeding." *Id.* at 175.

The *Erhardt* court relied in part on a statement made in *Morgan v. United States,* 309 F.2d 234 (D.C.Cir.1962), *cert. denied,* 373 U.S. 917, 83 S.Ct. 1306, 10 L.Ed.2d 416 (1963). In *Morgan,* the court affirmed the § 1001 conviction of a layman who held himself out before the courts as being admitted to practice law: "We hold only, on the authority of the Supreme Court construction [of § 1001 in *Bramblett* ], that the statute *does* apply to the type of action with which appellant was charged, action which essentially involved the 'administrative' or 'housekeeping' functions, not the 'judicial' machinery of the court." *Id.* at 237 (emphasis added). The *Erhardt* court relied on the following dictum from *Morgan:* "We are certain that neither Congress nor the Supreme Court intended the statute to include traditional trial tactics within the statutory terms 'conceals or covers up.' " *Id.* Although this language was directed at Morgan's argument that upholding his conviction for misrepresenting his status as an attorney would mean that it would be a § 1001 violation to engage in several traditional trial tactics, *e.g.,* defense counsel's closing argument on behalf of a client he knows to be guilty (as "covering up" the truth of the matter), *see id.,* the *Erhardt* court apparently believed that this statement supported the extension of the "traditional trial tactics" category to include falsified evidence and held that Erhardt's conviction must be reversed.

Relying on *Erhardt* and *Morgan,* several courts developed the "judicial function" exception to § 1001 liability. Some of these courts draw a distinction between a court's judicial functions and its administrative or housekeeping functions, and hold that § 1001 can be violated by false statements made in the administrative matters of the courts, but not the judicial functions of those courts. For example, falsely denying to a bankruptcy judge that one forged a particular bankruptcy document cannot be a violation of § 1001 because it was within the court's *judicial* capacity, *see United States v. Taylor,* 907 F.2d 801, 805 n. 3 (8th Cir.1990) (dictum; court based its decision on the "exculpatory 'no' " doctrine), submitting fictitious letters of recommendation for the district court to consider at sentencing was within the *judicial* function of the court and could not be a violation of § 1001, *see United States v. Mayer,* 775 F.2d 1387 (9th Cir.1985), giving a false name to a magistrate judge at a plea hearing was within a matter of the magistrate's *administrative* duties and thus was a violation of § 1001, *see United States v. Plascencia–Orozco,* 768 F.2d 1074 (9th Cir.1984), false representations on statement of indigency were *administrative* and thus were a proper basis for § 1001 liability, *see United States v. Powell,* 708 F.2d 455 (9th Cir.1983), *cert. denied,* 467 U.S. 1254, 104 S.Ct. 3540, 82 L.Ed.2d 845 (1984), *and rev'd on other grounds,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), giving a false name to a magistrate and filing a form consenting to proceed before the magistrate judge under the false name was within an *administrative* matter of the court and therefore subject to § 1001· liability, *see United States v. Holmes,* 840 F.2d 246, 248–49 (4th Cir.1988), and filing a false performance bond in bankruptcy court was an *administrative* matter and therefore the § 1001 conviction was upheld, *see United States v. Rowland,* 789 F.2d 1169 (5th Cir.), *cert. denied,* 479 U.S. 964, 107 S.Ct. 464, 93 L.Ed.2d 409 (1986). Other courts have applied the judicial function exception without considering the administrative/judicial dichotomy. *See United States v. Wood,* 6 F.3d 692, 694–95 (10th Cir.1993) (false statements made to FBI agents acting under auspices of federal grand jury were "made in connection with a judicial proceeding" and were therefore "exempt from prosecution pursuant to the 'judicial function' exception"); *United States v. Deffenbaugh Indus., Inc.,* 957 F.2d 749 (10th Cir.1992) (false affidavit submitted to the Department of Justice in connection with a grand jury investigation came within judicial function exception to § 1001 liability); *United States v. Abrahams,* 604 F.2d 386, 393 (5th Cir.1979) (making false statements concerning one's identity to a magistrate judge at a bail hearing could not violate § 1001 because " '§ 1001 is not a proper basis for charging a defendant with making a false statement in a judicial proceeding' " (quoting *Erhardt* ); even though false statement was regarding an administrative matter, court relied on judicial function exception anyway). *But see United States v. Barber,* 881 F.2d 345, 349–50 (7th Cir.1989) (submission of false letters to sentencing judge in another's criminal proceeding violated § 1001; court criticized the "so-called 'trial tactics' exception" and refused to apply it), *cert. denied,* 495 U.S. 922, 110 S.Ct. 1956, 109 L.Ed.2d 318 (1990).[5]

---

5. Worth noting is that the District of Columbia Circuit, which authored *Morgan,* has criticized the other circuits that have relied on the *Morgan* dictum in establishing the judicial function exception:

> A number of courts, relying upon the *Morgan* dictum, have actually held that there is a "judicial function" exception to § 1001....
>
> We are not persuaded to carve out a broad legislative function exception to § 1001 [as the defendant requested]. The *Morgan* dictum and apparently the subsequent opinions of other circuits are grounded primarily upon the concern that the statutory terms "conceals or covers up" not be applied to punish "traditional trial tactics":
>
> > Does a defendant cover up ... a material fact when he pleads not guilty? Does an attorney cover up when he moves to exclude hearsay testimony he knows to be true, or when he makes a summation on behalf of a client he knows to be guilty?
>
> *Morgan,* 309 F.2d at 237 (internal quotation marks omitted)....
>
> Although some of the other courts of appeals have since expanded upon the *Morgan* dictum, *e.g., Mayer,* 775 F.2d 1387, we have not, and we doubt that the "traditional trial tactics" rationale of that case shields from criminal responsibility a defendant who knowingly makes a material false statement of fact in a judicial proceeding. We see no reason, there-

The Supreme Court has added one final wrinkle in this area. It recently cited *Bramblett* with approval and noted that it had not created or yet approved the judicial function exception: "These courts [the ones creating the exception] have held that, although the federal judiciary is a 'department or agency' within the meaning of § 1001 with respect to its housekeeping or administrative functions, the judicial proceedings themselves do not qualify. [citing *Abrahams, Erhardt,* and *Morgan* ]. We express no opinion on the validity of this line of cases." *United States v. Rodgers,* 466 U.S. 475, 483 n. 4, 104 S.Ct. 1942, 1948 n. 4, 80 L.Ed.2d 492 (1984).

Of course, we are bound only by our own prior decisions and the decisions of the Supreme Court. Because no Sixth Circuit case has cited *Erhardt* and no Sixth Circuit case (either published or unpublished and available on an electronic database) has discussed the judicial function exception,[6] we are left only with *Bramblett* and *Erhardt* itself for guidance. And *Erhardt*'s foundation has been significantly weakened, if not entirely undercut, by the abolition of the two-witness rule in perjury prosecutions, the vitality of which was a primary concern in *Erhardt.* See *Erhardt,* 381 F.2d at 175 ("A contrary construction [one that permitted § 1001 liability for false testimony in a criminal proceeding] would undermine the effectiveness of the two-witness rule and of the perjury statute itself."). We therefore conclude that it is anything but clear that a judicial function exception is recognized in the law of this Circuit.

We find it unnecessary to reach the government's argument that "the 'judicial function exception' is inapplicable to false statements intended to conceal assets from the trustee and creditors for the ultimate purpose of retaining those assets after discharge because the determination and collection of assets constitutes an administrative, and not an adjudicative, function of the bankruptcy court" because we decline to adopt the judicial function exception. First, the Supreme Court in *Bramblett* said that § 1001 was to be read broadly and never indicated that there might be such a thing as a judicial function exception. Second, we agree with the *Poindexter* court, *see supra* note 5, that the judicial function exception does not rest on solid legal ground. Third, if we were to believe a limitation should be placed on § 1001 so that it did not overlap the purpose and scope of the federal perjury statute, this would not be the case in which to do it; none of the false statements here was made under oath and therefore none could be prosecuted as perjury. Finally, we read the Court's footnote in *Rodgers* as cautioning against an automatic acceptance of the validity of the judicial function exception; we will instead wait for the Supreme Court to tell us there is such an exception before approving it for use in this Circuit.

As a final and related ground for reversing his § 1001 convictions, Hubbard suggests that we follow cases such as *United States v. London,* 714 F.2d 1558 (11th Cir.1983), and *United States v. D'Amato,* 507 F.2d 26 (2d Cir.1974). We believe both are distinguishable.

In *London* it was held that an attorney who falsified a court order and gave it to his clients in order to defraud them of substantial sums of money did not violate § 1001. The *London* court held that § 1001 was concerned with misrepresentations made *to the government* and that an attorney's fraudu-

---

fore, to extend the putative "judicial function" exception to protect one who knowingly makes a material false statement of fact in the course of a legislative inquiry. *See Mayer,* 775 F.2d at 1392 (Fairchild, concurring) ("virtually none of the significant decisions has really defined the [judicial function] exception [or] expounded a rationale," and there is no "compelling reason for extending the exception beyond the exact holdings" of prior cases). *United States v. Poindexter,* 951 F.2d 369, 387 (D.C.Cir.1991), *cert. denied,* — U.S. ——, 113 S.Ct. 656, 121 L.Ed.2d 583 (1992).

**6.** This is true even of *Erhardt* because *Erhardt* preceded the other circuits' development of the judicial function exception, gave as the rationale for its holding the avoidance of undermining the perjury statute, *see* discussion *infra,* and did not purport to be developing any such "judicial function" exception. And although the *Erhardt* court did cite *Morgan,* it cannot be said that *Erhardt* was implicitly adopting the judicial function exception from *Morgan* because (as discussed above) *Morgan* did not create any such exception.

lent statement *to his clients,* even though related to ongoing federal civil litigation, was not a violation of § 1001. *London* is most easily distinguished by the fact that the attorney never made any fraudulent statement to the court or to the opposing party in any court document or proceeding. The *London* holding seems sound but is vastly different from the case at bar.

The *D'Amato* case is more similar. In a private civil action for damages arising out of the counterfeiting of Johnson Products's "Ultra Sheen" hair gel, D'Amato filed an affidavit denying knowledge that the products he sold were counterfeits. On appeal following a jury conviction for violation of § 1001, the Second Circuit reversed the conviction, holding that § 1001 does not apply to a false statement made in a private civil action. The court said that § 1001 "does not apply where the Government is involved only by way of a court deciding a matter in which the Government or its agencies are not involved." *D'Amato,* 507 F.2d at 28. The court emphasized the fact that the government's only involvement in the case was as adjudicator of the controversy and noted that in other § 1001 cases the government was often involved as an opposing party as well (e.g., false statements made in criminal cases; government as opposing party). *Id.* at 29.

We believe that *D'Amato* is also distinguishable from the case at bar. Without focusing on the distinguishing features, however, we simply hold that to the extent that *D'Amato* is similar enough to be controlling on this issue were this case being heard in the Second Circuit, we decline to follow it in the Sixth Circuit.

We therefore affirm Hubbard's conviction on counts V, VI, and VII.

### 3. Mail Fraud Counts (Counts VIII–X)

Since the 1970s, Hubbard's stepfather had owned a Fino boat. After his stepfather died in 1981, Hubbard took the boat from Florida to St. Clair Shores, Michigan. The boat was in "extremely poor" shape at the time, so Hubbard set out to restore the boat, employing the assistance of one Cliff Hammerlee. Hammerlee stripped down the boat, removing most of the equipment from the boat (e.g., seats, decking, gauges, etc.), and stored the equipment at his own home. When Hubbard did not have the money to pay Hammerlee to continue the restoration, Hubbard rented a truck and picked up the equipment.

In April 1985, Hubbard applied to Allstate for insurance on the boat, claiming its value to be $22,500. Although Allstate denied permanent coverage, it did grant temporary coverage through June 3, 1985. On June 3, Hubbard filed a claim with Allstate for an alleged June 2 theft of equipment from the boat. The Allstate claims adjuster took pictures of the boat, Hubbard sent a letter that itemized the replacement cost for the "stolen" equipment to Allstate on July 12, and Allstate paid a claim of approximately $4800. At trial Hammerlee identified the photos taken by the Allstate adjuster as representative of the boat's condition in 1981 just after he had removed all the equipment for Hubbard. These facts (and specifically the July 12th letter) formed the basis for Count VIII.

Also in April 1985, Hubbard applied for a loan to refurbish the boat. With his loan application, he included fraudulent documentation regarding (1) the boat's value, (2) a prior (non-existent) loan, (3) insurance coverage, and (4) the location of the boat. The loan was approved. By mail on July 31, 1985, Hubbard paid a portion of his loan, made fraudulent representations as to the progress of the restoration, and requested a short-term renewal of the loan. In response to Hubbard's request for a short-term renewal, the bank sent loan renewal documentation to Hubbard on August 29, 1985. The July 31 and August 29 mailings formed the basis of Counts IX and X. The jury found Hubbard guilty on all three mail fraud counts.

Hubbard argues that the evidence was insufficient as to each count of mail fraud because the scheme to defraud was "not dependent upon the charged mailings" and because the scheme had reached fruition before the mailings were made.[7]

---

**7.** Hubbard also argues that his conviction was barred by the statute of limitations. This argu-

ment is without merit because the indictment

■ Hubbard's insufficiency contention fails for two reasons: he misunderstands the required nexus between the scheme and the mailing, and he defines the scheme too narrowly. The scheme charged was not simply a scheme to defraud the insurance company, but was also a scheme to obtain by fraudulent means a loan for repairing a boat and to obtain by fraudulent means an extension of that loan. If the mailings made were " 'incident to an essential part of the scheme,' or 'a step in [the] plot,' " *Schmuck v. United States*, 489 U.S. 705, 711, 109 S.Ct. 1443, 1448, 103 L.Ed.2d 734 (1989) (citation omitted), liability for mail fraud may attach. Here, the submission of fraudulent documents to the insurance company and the submission of false loan information were obviously important steps in Hubbard's scheme. The third mailing was less integral, but nevertheless sufficient. In response to Hubbard's request for renewal of the loan, the bank sent him loan renewal documents in reliance on his prior misrepresentations. Because Hubbard caused the Bank's mailing by requesting the loan extension documents and because those documents were "a step in the plot," the evidence was sufficient to support the third mail fraud count. We therefore affirm his conviction on counts VIII, IX, and X.

### B. Ineffective Assistance of Counsel

■ Finally, Hubbard argues that his trial counsel's deficient performance violated the Sixth Amendment.

■ Generally, ineffective assistance of counsel allegations will not be addressed on appeal if they have not been raised in the district court. *See United States v. Hill*, 688 F.2d 18 (6th Cir.), *cert. denied*, 459 U.S. 1074, 103 S.Ct. 498, 74 L.Ed.2d 638 (1982). The exception to this rule is where the record on appeal is adequate to assess the merits of the defendant's allegations. *See United States v. Wunder*, 919 F.2d 34 (6th Cir.1990). The record here is sufficient to consider this assignment of error, so we may proceed.

In order to show ineffective assistance of counsel, Hubbard must establish two things:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

Hubbard makes a persuasive case for the incompetence of his trial counsel and thus can satisfy the deficiency prong. But such deficiency does not require reversal because in light of the evidence against him and the type of errors committed by his counsel, Hubbard cannot satisfy the prejudice prong; he cannot show that his resulting convictions are unreliable or constitutionally defective. Because there is no reasonable probability that but for his counsel's errors the result of his case would have been different, we reject his ineffective assistance of counsel claim.

### III

For the foregoing reasons, we **AFFIRM** the district court's judgment of conviction.

DAVID A. NELSON, Circuit Judge, concurring in part and dissenting in part.

Under our circuit-precedent rule, it seems to me that *United States v. Erhardt*, 381 F.2d 173 (6th Cir.1967), requires us to reverse defendant Hubbard's conviction on the three counts of the indictment (Counts V through VII) that charged him with having made false statements in violation of 18 U.S.C. § 1001.

*Erhardt* involved an indictment with two counts, one of which charged the defendant with perjury (18 U.S.C. § 1621) and the other of which charged him with using a false writing in violation of 18 U.S.C. § 1001. Only the reversal of the conviction on the § 1001 count is directly relevant here.

---

was returned on July 5, 1990, within five years of

the charged mailings.

*Erhardt*'s holding on the § 1001 issue was not based primarily on the two-witness rule, as I read the panel's somewhat cryptic opinion. The panel began its discussion of the § 1001 issue by saying that "[t]he two-witness rule is not dispositive of appellant's conviction under the count charging the introduction of a false document, since it is generally held that the two-witness rule does not apply to prosecutions under 18 U.S.C. § 1001." *Id.* at 175 (citations omitted). It is true that the panel seemed to be talking about its construction of § 1001 when it said, at the end of the opinion, that "[a] contrary construction would undermine the effectiveness of the two-witness rule and of the perjury statute itself." *Id.* I do not understand this statement to represent the principal basis for the panel's holding on the § 1001 issue, however, given the panel's explicit acknowledgement that the two-witness rule applied only to perjury prosecutions under § 1621 and not to false writing prosecutions under § 1001.

The principal basis for the holding on the § 1001 issue, as I understand it, was the passage from *Morgan v. United States,* 309 F.2d 234, 237 (D.C.Cir.1962), *cert. denied,* 373 U.S. 917, 83 S.Ct. 1306, 10 L.Ed.2d 416 (1963), quoted by the *Erhardt* panel as follows:

> "We are certain that neither Congress nor the Supreme Court intended the statute to include traditional trial tactics within the statutory terms 'conceals or covers up.' We hold only, on the authority of the Supreme Court construction, that the statute does apply to the type of action * * * which essentially involved the 'administrative' or 'housekeeping' functions, not the 'judicial' machinery of the court."

In adopting this statement as the basis for its holding that "§ 1001 does not apply to the introduction of false documents as evidence in a criminal proceeding," the *Erhardt* panel was saying, I believe, that § 1001 does not apply to conduct engaged in by the defendant in connection with the operation of a court's " 'judicial' machinery," as opposed to the performance of the court's " 'administrative' or 'housekeeping' functions."

If the introduction of false documents in court proceedings is conduct connected with the operation of the court's judicial machinery, and not with the performance of an administrative or housekeeping function, I can see no principled basis for concluding that the making of unsworn false statements in court proceedings is not likewise connected with the operation of the judicial machinery. Accordingly, I respectfully dissent from the affirmance of defendant Hubbard's conviction on the false statement counts of the indictment. I concur in the affirmance of the convictions on the remaining counts.